200 N.J. Super. 350 (1985)
491 A.2d 746
PAMELA STEWART, A MINOR BY HER GUARDIAN AD LITEM, RICHARD F. STEWART; RICHARD STEWART AND DONNA J. STEWART, PLAINTIFFS-RESPONDENTS,
v.
ALLSTATE INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 19, 1985.
Decided April 2, 1985.
*352 Before Judges McELROY, DREIER and SHEBELL.
John Haschak, III, argued the cause for appellant (W. Stephen Leary, attorney; John G. Tinker, Jr., of counsel; John Haschak, III, on the brief).
Thomas J. Shamy argued the cause for respondents (Thomas J. Shamy, on the brief).
The majority opinion of the court was delivered by SHEBELL, J.A.D.
Defendant insurance company appeals from a summary judgment finding it responsible under its PIP coverage to pay for the cost of a van with appropriate modifications for operation by plaintiff, a paraplegic. During the pendency of the suit the *353 claim was expanded to include a demand for a "lift chair," explained at oral argument to be a chair used at home with a mechanical device to raise the occupant to a standing position.
Defendant first objects to an earlier trial judge's ruling permitting this suit to proceed by order to show cause and complaint under R. 4:67-1(a) instead of under R. 4:67-1(b) by a summons and complaint followed by a motion for leave to proceed in a summary manner. Defendant's contention is valid, however it is disingenuous for the issue to be raised on appeal after defendant in its brief in opposition to plaintiff's motion for summary judgment stated:
... Technical objections to the Order to Show Cause procedure which were raised by the Defendant in its Answer have been waived by the Defendant in order that the claim for basic transportation expenses could be resolved by way of Summary Judgment....
In view of the specific waiver of this objection and the opportunity of the insurer to present its position fully to the trial judge we find this procedural defect to be without consequence.
Plaintiff seeks to compel payment for the basic cost of the van on the basis that it is a "medical expense" under N.J.S.A. 39:6A-4a. This provision requires payment of medical expense benefits regardless of fault, to persons sustaining bodily injuries while occupying a covered motor vehicle. The carrier is required to provide "[p]ayment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident." Id. N.J.S.A. 39:6A-2e states:
... "Medical expenses" means expenses for medical treatment, surgical treatment, dental treatment, professional nursing services, hospital expenses, rehabilitation services, X-ray and other diagnostic services, prosthetic devices, ambulance services, medication and other reasonable and necessary expenses resulting from the treatment prescribed by persons licensed to practice medicine and surgery .. . or by persons similarly licensed in other states and nations or any nonmedical remedial treatment rendered in accordance with a recognized religious method of healing. [(emphasis ours)]
We reverse the portion of the court's order requiring Allstate to pay for the basic cost of the van. We do not believe the Legislature intended the cost of basic transportation, in these *354 circumstances, to be included in "medical expenses." The certification of Pamela's father reflects:
A van type vehicle with a lift will permit Pamela to become less reliant upon others in order to continue to participate in a variety of physical activities necessary for her physical and emotional development.... Since both my wife and I are employed on a full time basis, we are not always available to accommodate her transportation needs and desires. As a result, without the appropriate vehicle, she will not be able to pursue these activities as often as she desires.
His certification states that he obtained estimates of the cost of modification of the van of approximately $10,800. Allstate has not declined to pay for such modification. Plaintiff's father also obtained estimates of the cost of a van; a Chevrolet will cost $11,159 and a Ford, $9,808. He alleges funds are not presently available for purchase of the van or modifications. He asserts that if the funds are made available Pamela will "become less dependent on others to transport her to school, therapy, sporting events and other events or places that she desires to go." The trial court noted that the total cost for the van, options and modifications amounts to $21,875.22 and that plaintiff "does not deny that, but for these injuries she would have purchased an ordinary automobile."
The father's certification attempts to intone the van as a "rehabilitation service." Counsel argues it is covered under the provision which refers to "... other reasonable and necessary expenses resulting from the treatment prescribed by persons licensed to practice medicine and surgery...." Under the proofs offered here it is neither of these. Dr. Rosenberg, her urologist, says:
... It is my strong feeling that Pamela would be able to mobilize much better if she had a van type of vehicle to drive around in.... [S]he would not do well in an ordinary vehicle. This van would be both important for her physical and emotional well being and I think with it would be more mobile and could possibly even seek employment in the future.
There does not appear to be any link between his specialty or urology and his opinion, nor has he prescribed the van as a "rehabilitative service" or as necessary medical treatment. Dr. Fleming, plaintiff's orthopedist, states:

*355 ... I feel this would be an appropriate piece of equipment to have available for her independent transfer and transportation. She has continued to participate in all variety or [sic] social and athletic activities, and this degreee [sic] of self-sufficiency would be a valuable addition to her continuing development.
His comments, as do plaintiff's father's, clearly indicate plaintiff is already very active although as stated by Dr. Bid of Kessler Institute, "... the patient would be more comfortable and will be at ease if she would drive a van." He also states:
... the patient is extremely active in wheelchair sports and she plays basketball two to three times a week on a competitive level ... [that is why] she is using a ... sports chair ... [and t]hese chairs are difficult to fold and [to] be placed in the back seat of a car.
It is not enough that the van will help to relieve the plaintiff from the effects of her injury even if "prescribed" by her physician; to be chargeable to the no-fault carrier the Legislature clearly stated that it must be medical in nature. Cf. Savaria v. Di Sano, 118 R.I. 357, 359, 373 A.2d 820, 822 (R.I. 1977). As was pointed out in Camp v. Deseret Mutual Benefit Association, 589 P.2d 780, 782 (Utah 1979) a van cannot be considered medical in nature in circumstances where it serves the same purpose that an automobile serves for everyone. While it may improve the injured person's mobility and make travel more convenient, it does not serve as a substitute for an activity every physically well person can do, such as is the case with a wheelchair or prosthetic apparatus. The van, as the letters from the physicians point out, is intended to make plaintiff's travel more comfortable, quicker and convenient. To constitute a medical expense the nexus between the expense and desired rehabilitative endeavor must be direct and not merely for the sake of allowing greater independence or convenience. See Galindo v. Guarantee Trust Life Insurance Co., 91 Ill. App.3d 61, 66, 46 Ill.Dec. 543, 547-48, 414 N.E.2d 265, 269-70 (Ill. App.Ct. 1980).
The carrier has agreed to bear the cost of modifying a van for plaintiff. We find no statutory provision which requires the carrier to provide the basic cost of the van in these circumstances. It is for the Legislature to decide whether *356 those in Pamela's position must be made "comfortable" and more "at ease" by the providing of such transportation. Extension of the statute as presently written involves considerations of public policy as well as concern for the probable effect upon the general premium structure of the no fault insurance program. Considerations of this nature cannot be met by judicial inquiry. The legislative branch is better equipped by the use of hearings to gather statistical data and to judge these effects. One must also consider where the line is to be drawn. Must the carrier also maintain the vehicle, replace it at regular intervals, supply fuel, oil and insurance coverage? These questions require answers once the decision is made to provide basic transportation. The statute should not be judicially extended.
Defendant also claims error involving the awarding of counsel fees to plaintiffs under R. 4:42-9(a)(6). While the rule permits counsel fees "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant," Judge Pressler in her annotations to this rule notes:
Since the stated intention of this rule was to permit an award of counsel fees only where an insurer refused to indemnify or defend in respect of its insured's third-party liability to another, it should not be extended, beyond its express terms, to permit a counsel fee award to be made to an insured who brings direct suit against his insurer to enforce casualty or other direct coverage.... Such a fee has, however, been allowed in personal injury protection benefit actions where the insured-claimant is successful. [Pressler, Current N.J. Court Rules, Comment R. 4:42-9(a)(6) (1985) (emphasis ours) (citations omitted)]
Following two cases wherein the Supreme Court itself authorized counsel fees to successful PIP claimants our Legislature passed L. 1983, c. 362, § 8, effective October 4, 1983, providing for payment of "reasonable attorney's fees" to a claimant who prevails in arbitration proceedings for overdue PIP payments. N.J.S.A. 39:6A-5c. Thus, notwithstanding the language of R. 4:42-9(a)(6), in light of the statutory amendment, the nature of personal injury protection coverage and the authorizing of counsel fees by the Supreme Court in such circumstances, we find such fees may be allowed. See Maros v. Transamerica *357 Ins. Co., 76 N.J. 572, 579 (1978); Cirelli v. The Ohio Casualty Ins. Co., 72 N.J. 380, 384-85 (1977); Felicetta v. Commercial Union Ins. Co., 117 N.J. Super. 524, 528 (App.Div. 1971), certif. den. 60 N.J. 141 (1972).
Defendant claims plaintiff improperly supplemented her request during the trial proceedings to include payment for the lift chair, and that the judge accepted the claim, without defendant having been given the statutory 30-day request for payment with a copy of the paid bill. Ordinarily we might agree with defendant that the statute must be complied with before payment is due. N.J.S.A. 39:6A-5b. However, at this stage in the proceedings defendant has had many months to pay. The need for the chair has been explained, was found to be reasonable, and defendant was not charged interest until the expiration of 30 days after the particulars concerning the chair were given.
We reverse the January 11, 1984 judgment as it relates to the basic cost of the van. We remand for entry of an order requiring Allstate to pay for the cost of the lift chair together with interest and counsel fees relating thereto. In light of Allstate's agreement the order shall also provide that Allstate shall pay, within 30 days of submission, the reasonable cost of suitable modification of a van or other vehicle which plaintiff may choose to adapt for her personal use. We do not retain jurisdiction.
DREIER, J.A.D. (concurring and dissenting).
I agree with the procedural discussions and findings of the majority concerning the issues of the impropriety of defendant's raising objections under R. 4:67-1, the allowance of counsel fees in P.I.P. cases, and the allowance of the lift chair claim.
The substantive claim that has divided this court is whether the basic cost of a vehicle which is to be modified for operation by a handicapped insured is properly includable in the insurance claim. N.J.S.A. 39:6A-2(e) reads:

*358 `Medical expenses' means expenses for medical treatment, surgical treatment, dental treatment, professional nursing services, hospital services, rehabilitation services, X-ray and other diagnostic services, prosthetic devices, ambulance services, medication and other reasonable and necessary expenses resulting from the treatment prescribed by persons licensed to practice medicine and surgery pursuant to R.S. 45:9-1 et seq. dentistry pursuant to R.S. 45:6-1 et seq. psychology pursuant to P.L. 1966, c. 282 (C. 45:14B-1 et seq.) or chiropractic pursuant to P.L. 1953, c. 233 (C. 45:9-41.1 et seq.) or by persons similarly licensed in other states and nations or any nonmedical remedial treatment rendered in accordance with a recognized religious method of healing.
The question, therefore, is whether this basic vehicle cost falls within "rehabilitative services ... and other reasonable and necessary expenses resulting from the treatment prescribed." I could rest this opinion upon the special facts of this case, since plaintiff is an internationally-known wheelchair athlete. Doctor Bid of the Kessler Institute for Rehabilitation stated in a letter that she "needs to continue to practice her wheelchair sports and needs to go to different destinations quite often. As the patient's parents do work full time, the patient needs independence of transportation from one place to the other. As she is now driving with hand controls she needs a vehicle which should be suitable for her needs." The doctor further explained in a later letter that plaintiff needed a van rather than a car since she uses a "quadra-wheelchair, which is a sports chair. These chairs are difficult to fold and be placed in the backseat of a car." In addition, her supervising physician, Dr. Fleming of Orthopedic Associates of Princeton, noted that plaintiff's self-sufficiency and her participation in social and athletic activities "would be a valuable addition to her continuing development." Finally, Dr. Rosenberg, plaintiff's attending urologist, found the van to be "important for her physical and emotional well being."
We are interpreting the specific statutory language quoted above as a case of first impression. I would determine that the nonmedical components of "treatment" mandated by the PIP statute or equivalent law should be decided on a case-by-case basis. See, for example, in similar settings Paul v. Ohio Casualty Ins. Co., 196 N.J. Super. 286, 298-99 (App.Div. 1984), *359 where this court directed payment under the PIP statute for plaintiff's live-in coordinator in addition to three shifts of attendants in plaintiff's own four-room apartment. There, however, the basic cost of the apartment (analogous to the basic cost of the van in our case) was not the subject of plaintiff's claim. Although the trial judge there referred to the federal taxation statutes under which both the basic and modification costs are deductible, I find that such authority lends only marginal weight to my conclusions. See also Squeo v. Comfort Control Corp., 194 N.J. Super. 366, 369-371 (App.Div. 1984) (in a worker's compensation setting, the cost of adding an independent apartment to plaintiff's parents' home was found to fall within the definition of "treatment" in view of the claimant's psychological condition).
The broader issue upon which I wish to rest my dissent need not refer to the unique athletic endeavors of plaintiff. Defendant's implication is that a handicapped individual who ordinarily could not afford the cost of a car or van should not be permitted such a luxury merely by reason of the accident. Nor should payment be made to a wealthier claimant who could, in any event, purchase basic transportation or who has other transportation available. Plaintiff, it is claimed, falls within this latter group, since her parents (before they both worked) drove her to her games. The majority feels, therefore, that she should not be absolved from this basic transportation expense as a result of the accident. Such expenses defendant tells us are "far beyond the contemplation of the Legislature" and "would stretch the meaning of the statute to the breaking point." The majority equates the correction of loss of the ability to walk with providing "a wheelchair or prosthetic apparatus" and the van merely as something "intended to make plaintiff's travel more comfortable, quicker and convenient" (at 355).
Viewing a less wealthy claimant, we note that in the absence of his or her paraplegia the lack of a car or other motorized *360 transportation would but force the individual to resort to public transportation or walking. In a society generally unprepared to provide for the needs of the disabled, a paraplegic cannot generally utilize these alternatives. In most areas public transportation is not equipped to accommodate a wheelchair; street corners often lack ramps and roadways lack sidewalks to accommodate a wheelchair. Thus the handicapped are too often home-bound, with its resultant destructive psychological influence. One does not have to be a psychiatrist or psychologist to understand that the virtual imprisonment of a paraplegic by his or her disability, or the alternative dependency upon others for basic mobility, can be psychologically devastating[1].
Basic transportation is as important as the vehicle's modification in providing mobility and thus benefiting the psychological stability of the claimant. If such total expense is due to a claimant without sufficient means to buy a car or van, is it reasonable to distinguish between such a claimant and one more affluent? Both pay the same premiums for insurance; both suffer from the same affliction. I would, therefore, determine that both must receive the same benefits.
It well may be that the more affluent claimant may not be satisfied with the basic vehicle or van (new or used) proposed by the insurance carrier. In that event, the insurer's bottom-of-the-line transportation payment might be supplemented from the claimant's own means so that a luxury automobile or van could be purchased. The basic transportation provided, however, should not be dependent on any "means" test.
I, therefore, respectfully dissent from so much of the majority opinion that finds as a matter of law that defendant bears no responsibility to pay for plaintiff's basic transportation costs.
NOTES
[1] If additional psychological proof is necessary here, I would at the very least remand for such proof, rather than reverse and direct that defendant is absolved from payment of the basic cost of transportation.