546 A.2d 75

John F. LANGAN and Mary Irene Langan, Court Appointed Guardians of Michael J. Langan, Incompetent, Appellees,

v.

HARLEYSVILLE INSURANCE CO., Appellant.

Superior Court of Pennsylvania.

Argued Feb. 4, 1988.

Filed July 1, 1988.

Reargument Denied Aug. 25, 1988.

James A. Pruyne, Towanda, for appellant.

Robert J. Landy, Sayre, for appellees.

Before CAVANAUGH, OLSZEWSKI and POPOVICH, JJ.

CAVANAUGH, Judge:

Michael J. Langan was seriously injured in an automobile accident. In the late summer of 1984, Dr. Nathaniel H. Mayer, a physiatrist at Moss Rehabilitation Hospital in Philadelphia, Pennsylvania, who had been Michael's treating physician, recommended that it would be in Michael's best interest for community mobility to have a van suitably equipped for his use to enable him to leave his home and travel to his therapy sessions and recreational sources. In September, 1984, acting on this recommendation, the plaintiffs below, who are the appellees herein, purchased a van at a cost of $17,494.41. Subsequently, the van was converted at a cost of $4,969.00 by the addition of a semi-automatic lift and other equipment so that Michael could get his wheelchair in and out of the van. Michael Langan is unable to drive the van.

At the time of the accident, Harleysville Insurance Company was the insurer on a policy issued to John F. Langan and Mary Irene Langan, who were appointed guardians of Michael J. Langan. The insurance company refused to pay for the van or the conversion and a civil action was com-

menced against it by John F. Langan and Mary Irene Langan as guardians of Michael J. Langan, an incompetent.[1] The appellees moved for summary judgment. This was granted on October 16, 1987 in favor of the appellees and against Harleysville Insurance Co., which has appealed to this court.

With respect to a motion for summary judgment, Pa.R. C.P. 1035(b) provides that such judgment may be entered if the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Helinek v. Helinek*, 337 Pa.Super. 497, 487 A.2d 369 (1985); *Loyal Christian Benefit Association v. Bender*, 342 Pa.Super. 614, 493 A.2d 760 (1985). However, summary judgment may only be entered in those cases which are clear and free from doubt. *Weiss v. Keystone Mack Sales, Inc.*, 310 Pa.Super. 425, 456 A.2d 1009 (1983); *Rossi v. Pennsylvania State University*, 340 Pa.Super. 39, 489 A.2d 828 (1985); *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986).

In the instant case, the parties entered into a stipulation of facts upon which the court entered summary judgment. While there is no dispute as to the facts presented, the plaintiffs below have not carried their burden of proving that they are entitled to judgment as a matter of law. The applicable provisions of the Pennsylvania No–Fault Motor Vehicle Insurance Act, which Act has been repealed, upon which the cause of action is based, stated in part at 40 Pa.S. § 1009.103:

Medical and vocational rehabilitation services *means services necessary* to reduce disability and to restore the physical, psychological, social and vocational functioning of a victim. Such services may include, but are not limited to, medical care, diagnostic and evaluation procedures, physical and occupational therapy, other necessary

---

1. Prior to the entry of judgment in the court below the insurance carrier did pay the cost of having the van converted.

therapies, speech pathology and audiology, optometric services, nursing care under the supervision of a registered nurse, medical social services, vocational rehabilitation and training services, occupational licenses and tools, and *transportation where necessary to secure medical and vocational rehabilitation services.* (Emphasis added.)

The Act provided that medical and vocational rehabilitation services are covered in appropriate circumstances and went on to state that medical services may include "transportation where necessary to secure medical and vocational rehabilitation services." The court below determined that the Act encompassed, within the meaning of transportation, the converted van which was purchased by the Langans. The basis for determining the necessity of the van was the letter from Nathaniel H. Mayer, M.D. to Harleysville Insurance Company in which he described Michael's injuries.[2] The letter went on to state: "In view of the above findings, Michael's ability to be transferred to and to sit in a car is not feasible ... Because of the pathological conditions involved in his case, Michael's best option for community mobility is to get around via van equipped suitably with a wheelchair lift ... We will be prescribing an appropriate wheelchair for Michael at another time, but I expect that he will function at that wheelchair level and, therefore, I think that a van suitably equipped for him is the best mobility device in the community to enable him to get out of the

**2.** The body of the letter stated with reference to Michael's condition:

I am writing to you to attempt to detail medical necessity for the Langan family for purchasing a van. Michael is now more than 18 months since his head injury. He has a spastic left hemiplegia and he has had musculoskeletal trauma to the right lower extremity, particularly in the area of the right knee. These impairments are severe and prognostically are not expected to remit. Our orthopedic consultant has indicated to us that Michael might be a candidate for a fusion of the right knee in the future if it would serve mobility purposes. In view of the above findings, Michael's ability to be transferred to and to sit in a car is not feasible. If he should undergo knee fusion in the future, this would make it even more difficult for him to sit in a car, since his entire lower extremity will be straightened.

home to get to his therapies, get to his recreational sources."

There is no doubt that the Act contemplates the furnishing of transportation where required to obtain medical and vocational rehabilitation services. It is not clear that it includes the purchase of a van that must be converted to include a chair lift and we definitely cannot say, on the basis of the record before us, that such a purchase is required in this case. First of all, Dr. Mayer's letter states his belief that the van is the "best mobility device in the community to enable him to get out of the house to get to his therapies, get to his recreational sources." It is doubtful that "recreational sources" fall within the ambit of "medical and vocational rehabilitation services." Further, the record is devoid of any evidence as to how often Michael requires medical or rehabilitation services and where they are rendered. There is no indication as to whether suitable transportation could be rented or provided more economically on a basis of having a van provided when needed for transportation.

We also note that Michael is unable to operate the van so that an operator is required. Further, there is no indication on the record that the van is used solely for Michael's benefit. In our opinion, the No–Fault Act did not intend that anyone other than the injured party could take advantage of the transportation to be provided by the insurer. A further problem in requiring the insurer to purchase the means of transportation is that this could include a continuing obligation to replace the vehicle upon the termination of its useful life.

There are no appellate cases in this Commonwealth dealing with the purchase of a vehicle to provide transportation. In *Zangrilli v. State Farm Mutual Automobile Insurance Company*, 131 P.L.J. 468 (Court of Common Pleas, Allegheny County, 1983) the court, following a non-jury trial, found that the insurer was responsible to pay the expenses of a properly equipped van and a snow and ice electrical melt system at the home of a paraplegic as these were necessi-

ties in his rehabilitation and training program. The opinion does not enlighten us as to the factual basis for the court's finding of necessity, but the non-jury verdict was entered after trial and presumably evidence was submitted to substantiate the verdict.

Our neighboring state of New Jersey had difficulty in determining if the cost of a modified van used by a paraplegic could be included as part of medical expenses under its No–Fault Act. The lower court entered summary judgment against the insurer for the cost of the van. On appeal, the Superior Court, Appellate Division, reversed that part of the court's order requiring the insurer to pay the basic cost of the van as it did not believe the legislature intended the cost of basic transportation to be included as medical expenses. *Stewart v. Allstate Insurance Company*, 200 N.J.Super. 350, 491 A.2d 746 (1985). The Supreme Court reversed the Appellate Division and held that the cost of the van should be included within medical expenses. *Stewart v. Allstate Insurance Company*, 103 N.J. 139, 510 A.2d 1131 (1986). A key factor was that the paraplegic could herself operate the modified van and it was indispensible to her physical and emotional well-being by permitting independent transportation for activities which were prescribed as therapy. In our own case, the injured party is unable to operate the van himself.

The opinion of the Supreme Court of New Jersey should be compared with that of the Supreme Court of Utah. In *Camp v. Deseret Mutual Benefits Association*, Supreme Court of Utah, 589 P.2d 780 (1979), it was held that a modified van was not "medical equipment" under the terms of a health policy providing coverage for medical supplies and "medical equipment" prescribed by a physician, notwithstanding that such a van was prescribed by a physician and was needed as a result of injuries sustained by the insured's son, who was a quadriplegic. Similarly, in *Galindo v. Guarantee Trust Life Insurance Company*, 91 Ill. App.3d 61, 46 Ill.Dec. 543, 414 N.E.2d 265 (1980), the court disallowed the cost of a van for a quadriplegic where the

main purpose of the van was to provide transportation for the injured student so that he could continue his education.

 Although these cases are not directly on point, involving as they do different statutes or definitions in an insurance policy, they nevertheless provide insight into the problems confronting courts where an insurer is called upon not merely to pay the costs of transportation of an injured person to obtain medical care as the need arises, but the actual purchase of the means of transportation. Where the insurer is called upon to purchase a vehicle, the person for whom the vehicle is to be purchased has the burden of proving that such a vehicle is the most economical and only feasible method of transporting the injured person "to secure medical and vocational rehabilitation services" and that the vehicle will be used solely for this purpose.

Obviously, in most cases, the statute does not contemplate the purchase of a vehicle and it would only be in the most unusual case where such purchase would be necessary. In the case before us, the appellees did not meet their burden of proof and the court erred in entering summary judgment.

Judgment reversed, without prejudice to appellees to submit evidence that the van in question is the most economical and only feasible method of transport to obtain medical and vocational rehabilitation services.

POPOVICH, J., files dissenting opinion.

POPOVICH, Judge, dissenting:

I cannot join in the Majority's determination that, under the applicable provision of the No–Fault Motor Vehicle Insurance Act repealed after the institution of the instant lawsuit, the law does not obligate the insurer to incur the cost of its insured's purchase of a van and its subsequent conversion "necessary to secure medical and vocational rehabilitation services". 40 Pa.S. § 1009.103 (repealed).

I find that the Majority gives too narrow a reading to § 1009.103 when it offers that the insured's use of the van

to "get to his recreational sources" discounts its being encompassed within the "medical and vocational rehabilitation services" approved under the No–Fault Act for the expenditure of monies by an insurer for its insured with regard to an almost paraplegic condition.

There is no dispute that the insured's physician recounted how his patient's "impairments are severe and prognostically ... not expected to remit." This reduced the insured's mobility function and necessitated the purchase of suitably equipped van "to enable him to get out of the home to get to his therapies...."

Under the No–Fault Act, as conceded by even the Majority, transportation aimed at rehabilitating a claimant, by means of medical and vocational services, is an approved expenditure called for under the law.

I fail to discern how the orthopedically-impaired claimant, whose condition is likely to degenerate to the point where a fusion of his knee is likely, falls outside the perimeters of the No–Fault Act because there is a *possibility* (which is unsubstantiated by the record) of his using the van for "recreational sources".

Even if such were the case, I pose the following: Would not the ability to participate in some form, any form, of recreational activity be part and parcel of a complete rehabilitation program? I would think so. Further, to interact with others or merely experience the joy of accomplishing a task in a sports context, e.g., with one's peers, cannot be minimized for it has its therapeutic benefits (psychologically) in aiding in the optimum progress and/or recovery of the injured party. Therefore, I find that the Majority has strayed afield in concluding that the insured failed to establish the non-existence of alternative, less-expensive means of traversing the streets and highways in his community to obtain the type of therapy necessary for his maximum, potential recovery. To so hold does a disservice to the insured and all of those similarly situated, at least as I read the statute in question.

Certainly, the insured's need for the conventional forms of therapy and his accessibility to those avenues of treatment come within the perimeters of "medical and vocational rehabilitative services". The Majority would deny the insured this admitted "coverage" because of the Majority's speculation as to the use of the van for purposes other than those prescribed for the insured's therapy. The record simply does not support such a syllogism.

On this same subject, I take issue with the Majority when it implies that it is the obligation of the insured to establish the non-existence of alternate sources of transportation and that the van would be used exclusively for his use.

My reading of the state and law on the subject discloses that imposition of no such obligation upon the insured. I find once the insured has established a "medically necessary" reason for the purchase and adaptation of a van for his rehabilitative needs, which I find he had done at bar, then the burden of proving otherwise would fall on the shoulders of the insurer. This did not occur here with regard to the insurer. Accordingly, giving it a liberal and common sense interpretation, I find that the statute would and does afford an insured the right to reimbursement for the purchase *and* adaptation of a van for his rehabilitative needs. See *Zangrilli v. State Farm Mutual Automobile Insurance Co.,* 131 P.L.J. 468 (1983); see also *Stewart v. Allstate Insurance Co.,* 103 N.J. 139, 510 A.2d 1131 (1986)[1].

1. Would not the insured's inability to operate the van on his own be even more of an indication of his need for vehicular assistance of the type at issue here. One who could motor on his/her own would appear to be a candidate for public transportation, as compared to the almost intractable insured here.

 The insured has established his need for a specialized vehicle to aid him in his efforts to recover from an obviously crippling injury. His doctor concurred in the scope of the injury and a prognosis for restricted movement, in the future, for the insured. With a forecast of limited mobility, all means to aid the injured in the road to (partial/total) recovery has been insured against by his guardians. This writer would not withdraw this opportunity from the injured, and my reading of the law and cases on the matter are not to the contrary.

The possibility that the petitioner *may* make use of the van for purposes other than rehabilitation is pure speculation and has no place in a present review of the grant of the motion for summary judgment.

Being unpersuaded by the rationale of the Majority in reversing the actions of the court below, I would affirm the order of the court below.