Carol Ann **SWARTZ, Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY and American States Insurance Company, Jointly and Severally, Defendants.**

No. 1:94–cv–338.

United States District Court,
W.D. Michigan,
Southern Division.

June 8, 1995.

J. Clarke Nims, Gruel, Mills, Nims & Pylman, Grand Rapids, MI, Peter H. Kosick, Kosick & Rochau, St. Joseph, MI, for plaintiff.

Ralph M. Reisinger, Roberts, Betz & Bloss, Grand Rapids, MI, for defendants.

### OPINION AND ORDER ON DEFENDANTS' DISPOSITIVE MOTION

MILES, Senior District Judge.

In this diversity action, plaintiff Carol Ann Swartz seeks recovery of first party no-fault benefits and injunctive relief under Michigan's no-fault act, M.C.L. § 500.3101 *et seq.* The matter is currently before the court on a motion by the defendants, Nationwide Mutual Insurance Company and American States Insurance Company, for judgment on the pleadings or, in the alternative, for summary judgment. Plaintiff has opposed the motion. Oral argument has not been requested. For the reasons to follow, defendants' motion is hereby **GRANTED IN PART** and **DENIED IN PART.**

### FACTS

On May 24, 1978, plaintiff was driving a car which was involved in an accident. Plaintiff suffered a closed head injury in the accident, which has rendered her a quadriplegic. She is permanently confined to a wheelchair as a result of her injuries, and she requires assistance with her daily living.

At the time of the accident, the defendants were plaintiff's no-fault insurance carriers. Over the years since her accident, they have provided her with various no-fault benefits. One such benefit was the purchase of a 1983 Ford van equipped with hydraulic lifts to accommodate plaintiff's wheelchair.[1] In

---

1. The defendants agreed to provide plaintiff with this van after plaintiff filed a state court lawsuit against them in 1982.

1990, plaintiff purchased a second, new Ford van adapted for handicapped use, at a total cost of $27,500. Thereafter, the defendants reimbursed her in the sum of $10,000, which they contend represents the cost for equipping the van for plaintiff's use. *See* Brief in Support of Motion, Ex. 17.[2] Another no-fault benefit which the defendants have provided to the plaintiff is payment for modifications to her home to make it handicap-accessible. Finally, defendants have, since 1980, provided plaintiff with reimbursement for 24–hour per day in-home nursing care. Since 1984, the same firm, now known as Memorial Home Health Care and Staffing of Indiana ("Memorial"), has performed this service for plaintiff.[3] Some of the home health care providers employed by Memorial have been caring for plaintiff for over seven years.

On March 30, 1994, defendant Nationwide wrote to plaintiff, indicating that it had decided to contract with another firm, Visiting Nurses of Southwestern Michigan ("Visiting Nurses"), to assume the role of aide staffing for plaintiff on a 24–hour per day basis, beginning on May 1, 1994. Nationwide also advised plaintiff, however, that she could indicate her preference for another organization or individuals to care for her, but that any reimbursement would be based on reasonable charges for a Michigan vendor providing the same service.[4] Memorial, which is located in Indiana, currently charges a higher rate for its services than Visiting Nurses, due to Indiana Medicaid requirements.

Plaintiff filed this action in Berrien County Circuit Court on or about April 21, 1994. The defendants filed a timely notice of removal on May 26, 1994. In her complaint, plaintiff seeks a restraining order prohibiting the defendants from causing a change in her nursing staff. Plaintiff has also alleged that in November, 1993, she purchased a third hydraulically equipped van, this time a 1994 model Dodge, at a cost of $34,800, for which

she alleges the defendants are required to reimburse her and for which she seeks recovery. Finally, plaintiff has alleged that she has incurred approximately $40,000 in home improvements necessary to accommodate her handicapped condition, for which the defendants are required to reimburse her and for which she seeks recovery. Plaintiff also seeks an award of attorneys' fees and penalty interest as provided by statute.[5]

## ANALYSIS

Both defendants have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), or, in the alternative, for summary judgment, raising a number of defenses. First, they contend that plaintiff's claim for home modifications is barred in whole or in part due to plaintiff's failure to present a claim to the carriers within one year of incurring the cost for the modifications. They also contend that the claim for home modifications, in any event, does not relate to plaintiff's handicapped condition, or that plaintiff has been unable to document which costs are related to her condition. Secondly, the defendants contend, with respect to plaintiff's purchase of a third modified van, that plaintiff cannot establish that the cost of this vehicle is a reasonable and necessary expense, for various reasons. Finally, the defendants contend that plaintiff will be unable to meet her burden at trial as to the reasonableness of the expense of the particular home health care services she seeks, specifically, the provision of those services by Memorial, her provider of choice.

Because the defendants have presented matters outside the pleadings, which have been considered by the court, the court must treat their motion as one for summary judgment. Fed.R.Civ.P. 12(c). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admis-

---

2. Once again, the defendants agreed to pay this amount after plaintiff filed a state court lawsuit against them in 1991.

3. Actually, Memorial has been providing care for plaintiff since 1991, when it purchased another nursing care provider.

4. In its letter, Nationwide indicated that reimbursement for the calendar year 1994 would be in the amount of $10,503.00 monthly and $126,-040.00 yearly.

5. The defendants have asserted a counterclaim against plaintiff for declaratory relief. According to the defendants, that counterclaim is not at issue in the present motion.

sions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). In evaluating a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the burden of establishing the non-existence of any genuine issue of material fact and may satisfy this burden by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). While inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, once the moving party establishes the absence of evidence supporting an essential element of the nonmoving party's case, on which that party will bear the burden of proof at trial, the nonmoving party is required to produce specific facts showing that there is a genuine issue for trial. *Id.* at 322–23, 106 S.Ct. at 2552–53. Only "material" factual disputes—those which may have an effect on the outcome of a lawsuit under the applicable substantive law—will forestall the entry of summary judgment, upon a motion properly supported. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

*Home Modifications*

■ In her complaint, plaintiff seeks recovery of "approximately $40,000" which she allegedly incurred for "recent" improvements to her home "to better accomodate [sic] her handicapped condition[.]" Complaint at p. 4, 7. The date of these improvements, and their precise nature, have not been alleged. The defendants argue that plaintiff's claim for home modifications is barred in whole or in part due to (1) plaintiff's failure to present a claim for these expenses within one year of incurring the cost for the modifications, and

(2) plaintiff's inability to document which, if any, portion of the costs relates to her handicapped condition.

M.C.L. § 500.3107 provides in pertinent part as follows:

Except as provided in subsection (2), personal protection insurance benefits are payable for the following:

(a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation. . . .

In addition, M.C.L. § 500.3145(1) provides in pertinent part as follows:

An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. *However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.*

(emphasis supplied).

In responses to interrogatories propounded by the defendants, the plaintiff has admitted that she did not present a claim to the defendants for the home modifications at issue at any time before filing this lawsuit. Brief in Support of Motion, Exhibit 1. Therefore, the earliest date on which the defendants had notice of the claim was on or about April 21, 1994. Defendants' factual submissions filed with their motion indicate that $33,500 of the expenses incurred by plaintiff were for the construction of a room addition to plaintiff's home, for which plaintiff contracted on or about November 2, 1992. *Id.*, Exhibit 4. The defendants contend that the contractor who performed the work on plaintiff's home, Jim Treat, has testified that $32,000 of this initial $33,500 of work had been paid as of December 22, 1992. Plaintiff

has not disputed this assertion. Indeed, plaintiff has specifically admitted that "some of" her home modification expenses—she fails to indicate which—"were incurred more than one year before the filing of the present action, and therefore, appear to be barred" by § 500.3145. Plaintiff's Response at pp. 10–11.[6] However, plaintiff has requested that the court "deny Defendants' motion to the extent the expenses for the reasonable necessary home modifications can be shown to have been incurred within one year preceding the filing of the present action." *Id.* at p. 11.

Unfortunately, missing from plaintiff's response is any indication as to how the factfinder will be able to determine when any recoverable expenses were incurred, or even any indication of the precise nature of the services or the amount incurred for them. Moreover, although plaintiff alleges that she did incur expenses for barrier-free modifications and "special appliances" totalling $22,002.14,[7] plaintiff has simply presented no admissible evidence indicating what if any portion of this amount was incurred within one year of the filing of this action.[8] Simply put, plaintiff has responded to the defendants' properly supported motion without providing any specific facts showing that there is a genuine issue for trial. Under the circumstances, the court concludes that there is none, and will grant summary judgment in favor of the defendants on the issue of the home modifications.

*Modified Van*

The defendants argue that plaintiff cannot establish that the $34,800 cost of this vehicle is recoverable, for various reasons. Specifi-

cally, they argue that (1) plaintiff has never provided any documentation indicating the options which were purchased with the van, thus failing to document reasonableness of the expense; (2) plaintiff has never documented the value received for the pre-existing van which she replaced; (3) plaintiff's request for a new modified van within so short a time period is not reasonable; (4) an insurance carrier should not, under the no-fault law, be required to bear the full price of any vehicle after the vehicle damaged in an accident has already been replaced, nor should the carrier be required to continue to upgrade and/or replace such vehicle; and (4) no showing has been made that a specially modified van is the only means of transportation for plaintiff or that it is required to meet her reasonable and necessary medical needs.

Failing to gear her response toward each of the precise arguments raised by the defendants, the plaintiff merely argues that (1) Michigan law requires the no-fault carrier to bear the full cost of a modified van, *see Davis v. Citizens Ins. Co. of America,* 195 Mich. App. 323, 489 N.W.2d 214, 216 (1992), (2) "[t]he facts will show," despite the relatively young age of the van, that it "was at the end of its useful life," Plaintiff's Response at p. 9, and (3) the resale value was less than has been suggested by the defendants.

■ The following elements must be satisfied before an item will be deemed an allowable expense under the no-fault statute: (1) the expense must have been incurred, (2) the expense must have been for a product, service, or accommodation reasonably necessary for the injured person's care, recovery, or

---

**6.** Plaintiff has also admitted that the evidence shows that the room addition itself was unrelated to her disability and thus, presumably, not a recoverable expense. Plaintiff's Response at p. 10. However, she has contended that some barrier-free modifications and "special appliances" were included in the amount for which she seeks recovery in her complaint.

**7.** *See* note 6 *supra.*

**8.** An additional reason exists to grant the defendants' motion for summary judgment with respect to the home modification claim—the lack of documentation indicating what the alleged $22,002.14 in expenses represents and how it

relates to plaintiff's handicap. Some evidence exists documenting some costs which appear to have been for modifications or improvements related to the handicap. *See* Brief in Support, Exhibit 5 (listing $5,226.34 for lowering sink, protecting walls from wheelchair damage, etc.). However, the date on which these expenses were incurred has not been identified. Moreover, although Mr. Treat has provided plaintiff's attorney with a written "recap" of the expenses for plaintiff's room addition totalling $42,217.60, he conclusorily attributes $22,002.44 of the invoice to "insurable" items, without documenting the nature of these items or indicating the date on which the amount was paid. *Id.,* Exhibit 6.

rehabilitation, and (3) the amount of the expense must have been reasonable. *Moghis v. Citizens Ins. Co. of America,* 187 Mich.App. 245, 466 N.W.2d 290, 292 (1990). The burden of proof on these issues lies with the plaintiff. *Nasser v. Auto Club Ins. Ass'n,* 435 Mich. 33, 457 N.W.2d 637, 645 (1990).

■ *Davis* does support the proposition that, under some circumstances, the cost of a modified van purchased may be an allowable expense under the no-fault statute. 489 N.W.2d at 216. However, the defendants have presented statistics compiled by the Motor Vehicle Manufacturers Association indicating that the mean age of passenger cars in use in the United States for the years 1983 through 1993 was in excess of seven years, and the median age was in excess of six years. Brief in Support, Exhibit 20.[9] Under the circumstances, they argue, to require them to replace or modify a vehicle every three years, particularly given the circumstances present in this case (i.e., coverage already provided for a damaged vehicle, a prior modified van purchase, and another recent van modification), is unreasonable.

Assuming, for purposes of resolving this motion, that Michigan courts would require no-fault carriers to bear the full cost of a specially modified van under the facts presented, the court concludes that the defendants have properly supported their motion for summary judgment by showing that plaintiff's early replacement of her second modified vehicle was not reasonable.[10] Although plaintiff contends that "[t]he facts will show" that her second van had "in excess of 100,000 miles and was deemed unsafe by several persons," Plaintiff's Response at p. 9, she has failed to present affidavits, deposition testimony, or any other factual substantiation for her bald assertions, contrary to the requirements of Rule 56. In addition, the defendants have indicated that plaintiff has failed to provide any breakdown of the $34,800 purchase price indicating what accessories were include in the price—thus making virtually impossible any determination of whether the cost was reasonable or whether the options included with the van were necessary.[11] Plaintiff has, in her response, utterly failed to address this critical deficiency through affidavits, deposition testimony, documents, or otherwise. Finally, plaintiff has

---

9. The ages for trucks were slightly higher.

10. The court in *Davis* noted that (1) the cost of the van was reasonable, (2) the expense was incurred, and (3) the van was reasonably necessary, given that the plaintiff had been rendered a paraplegic in an accident, she had only limited access to alternative means of transportation where she lived, and she needed transportation to go to work (a fact which, without question, is not present in this case). 489 N.W.2d at 215–16.

In a persuasive concurring opinion in *Davis,* Judge Griffin stated his view that the lower court in that case erred in requiring the defendant to bear one hundred percent of the initial purchase price of the van. *Id.* at 218. He believed the correct measure of plaintiff's transportation damages was the difference between the cost of the specially equipped van and the value of the plaintiff's previous vehicle, *id.* although he believed that this issue had not been properly preserved by the defendant.

In his concurring opinion, Judge Griffin also indicated that other no-fault jurisdictions which had considered the issue of specially equipped vans had done so with "mixed results." *Id.* (citing *Stewart v. Allstate Ins. Co.,* 103 N.J. 139, 510 A.2d 1131 (1986) (cost of specially modified van covered) and *Langan v. Harleysville Ins. Co.,* 376 Pa.Super. 372, 546 A.2d 75 (1988) (cost covered only if it is proved that vehicle is the

most economical and only feasible method of transporting the injured person to secure medical and vocational services and the vehicle will be used solely for such purposes)). Similarly, this court expresses some concern regarding whether the Michigan Supreme Court would adopt the reasoning in *Davis,* which appears to allow the plaintiff a windfall rather than simply providing compensation for a loss. However, given plaintiff's failure to document the reasonableness of the expense, the court need not resolve this question.

11. Plaintiff has attached the invoice for the van as Exhibit B to her complaint. Although it appears to indicate that $13,500 of the purchase price was for adaptive equipment, the options included with the van itself are not listed, nor has plaintiff provided such a listing in response to the defendants' motion.

Notably, plaintiff has also attached to her complaint an invoice for her 1990 van purchase. Complaint, Exhibit A. This invoice, unlike the 1993 invoice, lists some of the options included with the van (although it does not provide a breakdown of the price of each of the options). One option included on the 1990 invoice is a color television. If a similar option was included with the latest van, the expense of the option would not be allowable under the no-fault act.

admitted that she received some value for the 1990 van, but she has likewise failed to document this amount through proper factual submissions.

"Where a plaintiff is unable to show that a particular, reasonable expense has been incurred for a reasonably necessary product and service, there can be no finding of a breach of the insurer's duty to pay that expense, and thus no finding of liability with regard to that expense." *Nasser,* 457 N.W.2d at 645. Under the circumstances, given the lack of proof as to the reasonableness and necessity of the charges, the court concludes that the defendants are entitled to summary judgment on plaintiff's claim for the cost of this latest modified vehicle.

*24–Hour Attendant Care*

The defendants argue that plaintiff will be unable to meet her burden of proof at trial as to the reasonableness of the expense of the 24–hour attendant care provided by Memorial. Specifically, they argue that although Memorial has, since 1993, charged at the rate of $16.40 per hour,[12] the defendants have taken steps to procure another caregiver, Visiting Nurses, which will provide the same services at the rate of $13.95 per hour, and that other providers might also be able to perform similar services at lower rates than Memorial. The defendants further argue that because the objective of the no-fault statute is to provide prompt monetary relief at the lowest cost to the system, *see Dean v. Auto Club Ins. Ass'n,* 139 Mich.App. 266, 362 N.W.2d 247, 251 (1984) (no-fault act "was as concerned with the rising cost of health care as it was with providing an efficient system of automobile insurance"), they should not, as a matter of law, be required to pay Memorial at the requested rate. Plaintiff has responded that (1) she should not be required to change her current caregivers because such a change would be both physically and psychologically detrimental to her, in view of the strong emotional attachments which she has formed over the years, and (2) the evidence will show that Memorial's rates are competitive and reasonable.

With respect to plaintiff's specific demand for injunctive relief—an order prohibiting the defendants from causing a change in her nursing staff—the undisputed evidence shows that the defendants have not dictated what caregivers the plaintiff will have. Plaintiff remains free to choose her own caregivers. Complaint, Exhibit D. The reimbursement for these services, however, remains a matter over which the defendants retain some control by virtue of the no-fault statute's requirements, and that is the true issue presented by the defendants' motion. Contrary to plaintiff's suggestion that her emotional attachment to her current caregivers is of critical importance in this case, *see* Plaintiff's Response at p. 5, Michigan law requires her to prove that their charges are reasonable. Her emotional bond with them is of little, if any relevance in this determination.

To their credit, the defendants have not simply arbitrarily determined what they deem to be a reasonable rate for plaintiff's attendant care and left her to find a provider who will charge this rate. The defendants have submitted the affidavit of Val Bauer, the vice president of private duty nursing for Visiting Nurses, who indicates that Visiting Nurses can provide the same level of care for plaintiff which is currently being provided by Memorial at a rate of $13.50 per hour or approximately $9,828 per month. Brief in Support, Exhibit 12. Ms. Bauer further indicates that this charge is a reasonable charge for attendant care services in southwestern Michigan.

In contrast, plaintiff relies on the deposition of Elizabeth Walker, director of staffing services for Memorial. Memorial was charging plaintiff $13.95 per hour until September, 1993 when the state of Indiana instituted a statewide rate, at which time it became illegal for a licensed organization to bill below the published Medicaid rate. Walker Dep. at pp. 37–38. At that point, Memorial began billing at the rate of $16.50 per hour for its services to plaintiff. However, Ms. Walker has indicated that Memorial's rates are "[v]ery, very similar" to those of its "top

12. At the time Memorial took over plaintiff's care for its predecessor, it charged plaintiff $13.95 per hour, which was the rate in effect at the time Memorial purchased the company.

competitors" in the southwestern Michigan/northwestern Indiana region, as close as ten to 15 cents per hour. *Id.*

The defendants argue that a recent case, *McGill v. Automobile Ass'n of Michigan,* 207 Mich.App. 402, 526 N.W.2d 12 (1994) addresses a nearly identical issue. In that case, the defendant insurance carriers acknowledged an obligation to pay the plaintiffs' medical bills, but they declined to pay the full billed amounts, paying only the amounts which they believed to be reasonable. The court affirmed a grant of summary disposition in favor of the defendant carriers, concluding that the plaintiffs had suffered no pecuniary injury. In its ruling, the court rejected the plaintiffs' argument that the defendants were obligated to pay the entire amount of the bills, noting that

> Such an interpretation [of the no-fault act] would require insurance companies to accept health care providers' unilateral decisions regarding what constitutes reasonable medical expenses, effectively eliminating insurance companies' cost-policing function as contemplated by the no-fault act.

526 N.W.2d at 15. The defendants argue that under *McGill,* the insured may not dictate the exact identity of a caregiver and, thus, dictate the rate to be paid that caregiver whether reasonable or not.

*McGill* does indicate that the insurer is not obligated to pay unreasonable charges for medical services. However, plaintiff's position, which is not without factual support, is that Memorial's charges are reasonable. Memorial's charges are not unreasonable as a matter of law simply because another provider charges less. Because the defendants have not shown the lack of a genuine issue as to the reasonableness of Memorial's charges,

the court will deny their motion as to plaintiff's claim for attendant care.[13]

As the court has previously noted, plaintiff's precise request for injunctive relief is insupportable, insofar as she seeks to prohibit the defendants from "causing a change in [her] present nursing staff" on either a temporary or permanent basis. *See* Complaint, at p. 6–7. However, it is unclear to the court whether plaintiff seeks other relief with respect to the claim for attendant care services.[14] *See id.* (requesting "such further relief as shall be agreeable to equity and good conscience"). The defendants appear to be under the impression that the plaintiff is seeking declaratory relief, insofar as she could face potential responsibility for costs of her attendant care above and beyond what the defendants are paying. Accordingly, the court concludes that the issue of the reasonableness and necessity of Memorial's charges remains for trial.

## CONCLUSION

For the reasons set forth above, the court hereby GRANTS the defendants' motion for summary judgment as to plaintiff's claims for home modifications and a modified van, and DENIES the motion as to plaintiff's claim for attendant care.

So ordered.

---

13. Another consideration, which the defendants have not adequately addressed, is that plaintiff, who was, at the time she filed this case, a resident of Niles, Michigan, purchased a new home in Elkhart, Indiana in late 1994. Brief in Support, Exhibit 16. The defendants have not supplied any information regarding whether Visiting Nurses will be in a position to provide plaintiff with services in Indiana, and, if so, whether it will be required to charge the same rates that Memorial contends it is required to charge under Indiana Medicaid law.

14. Plaintiff has not indicated that she has been, or anticipates being billed by Memorial for any amounts unpaid by the defendants. Indeed, some question exists as to whether Memorial could hold plaintiff liable for expenses not paid by the insurer. *See McGill,* 526 N.W.2d at 14 (noting that "it is unlikely that the insureds would be liable for these expenses"). Moreover, at least as of the time Elizabeth Walker's deposition was taken, Memorial apparently had no intention of cutting off services to plaintiff. *See* Walker Dep. at p. 45.