WILLIAM GALINDO, JR., Plaintiff-Appellant, *v.* GUARANTEE TRUST LIFE INSURANCE COMPANY, Defendant-Appellee.

Third District   No. 80-88

Opinion filed December 16, 1980.

62

Robert G. Day and Robert G. Day, Jr., both of Peoria, for appellant.

Robert W. Bach, of Goldsworthy, Fifield & Prusak, of Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff William Galindo, Jr., initiated this action to recover benefits under an accident insurance policy issued by defendant Guarantee Trust Life Insurance Company. After each party moved for summary judgment, the circuit court of Peoria County entered judgment in defendant's favor. This appeal is from that judgment.

In October 1974, plaintiff sustained a broken neck while playing in a high school football game and as a result of that injury, is a quadriplegic. The high school which plaintiff was attending at the time of his injury was a member of the Illinois High School Association (hereinafter IHSA). That association had an accident insurance policy, issued by defendant, providing various benefits for students injured in interscholastic athletic activities. The first two issues with which we are presented concern the coverage afforded by the policy and its companion information brochure.

Plaintiff's initial assignments of error invoke the specific loss provision of the policy, which provides:

"Part III                Specific Loss Insurance

If the Insured by reason of injury shall sustain any one of the following specific losses within 180 days from the date of accident, the Company will pay for the loss of:

| | | | |
|---|---|---|---|
| Life | $ 1,000.00 | One Foot and One Eye | $5,000.00 |
| Both Hands or Both Arms | 10,000.00 | One Hand or One Arm | 5,000.00 |
| Both Feet or Both Legs | 10,000.00 | One Foot or One Leg | 5,000.00 |
| Both Eyes | 10,000.00 | Either Eye | 5,000.00 |
| One Hand and One Eye | 5,000.00 | Thumb and Index Finger of Either Hand | 2,500.00 |

Loss shall mean in regard to hand or hands or foot or feet, actual severance through or above wrists or ankle or ankles, and loss of sight of eye or eyes shall mean the irrecoverable loss of the entire sight thereof."

Plaintiff first contends that this provision provides for the payment of benefits for the loss of arms or legs without the necessity of actual severance. Defendant acknowledges that the provision does not require severance in regard to these members but contends the policy elsewhere provides that dismemberment is a condition for the payment of loss benefits.

The subject policy mentions dismemberment in captions on its front cover and again on the top of its first page:

"This policy provides indemnity for Accidental Death, Dismemberment or Loss of Sight, caused by Accidental Bodily Injury and provides payment for expense incurred for the treatment of Accidental Bodily Injury as herein limited and provided."

The policy additionally contains a box on its first page, under the caption "Schedule," which contains the words and figure:

"Maximum Dismembership Benefit
$10,000.00."

A companion brochure, entitled "Catastrophe Accident Insurance Program" prepared by defendant for distribution to principals of IHSA member schools, makes no mention of severance or dismemberment.

■■ An insurance policy in which no ambiguity appears is to be read as any other contract, that is, according to the plain and ordinary meaning of its terms (*Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 400 N.E.2d 921) and interpreted from an examination of the complete document and not an isolated part (*Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 319 N.E.2d 491). Where provisions in an insurance policy are clear and unambiguous, courts do not hesitate to enforce those provisions (*Kirk v. Financial Security Life Insurance Co.* (1978), 75 Ill. 2d 367, 389 N.E.2d 144); however, where language in a policy is subject to

different interpretations, such ambiguity is to be construed in favor of the insured and not the insurance company which drafted the contract of insurance. *Dora Township v. Indiana Insurance Co.*

■■ An examination of the complete subject policy reveals the afore-mentioned dismemberment captions as well as the specific requirement of actual severance in regard to loss of feet and hands. Plaintiff suggests that the captioned material is "not part of the insuring clause"; however, we believe that headlines or captions may be read into the policy. (See 43 Am. Jur. 2d *Insurance* §282 (1969).) Plaintiff also suggests that as neither dismemberment nor severance is mentioned in the brochure, the brochure should control. While courts have so held under the theory that group insurance certificates are a part of a total contract under the particular language of the certificate or under a theory of estoppel (see *Hofeld v. Nationwide Life Insurance Co.* (1975), 59 Ill. 2d 522, 526-27, 322 N.E.2d 454, 457), conflict between a certificate and master policy does not exist when the certificate is silent on a point in controversy (*cf. Hofeld v. Nationwide Life Insurance Co.*). Without reaching a characterization of the subject policy, we find an examination of the subject brochure similarly reveals no conflict with the subject policy. We therefore do not reach the question of whether the brochure should here control.

It is nonetheless clear from an examination of the specific loss provision and policy captions that an ambiguity here exists. While the captions suggest the policy indemnifies for death, dismemberment, or blindness, no reference is made to dismemberment in the specific loss provision; rather, the reference in that provision is to severance, and that reference is only in regard to hands and feet. The policy does not in any manner define "loss" in regard to arms, legs, or digits in a provision in which it could have easily done so.

In *Theorell v. Supreme Court of Honor* (1904), 115 Ill. App. 313, a carpenter had fallen from an elevated position and dislocated his neck, as a result of which his lower limbs were paralyzed. Prior to the accident, his insurance membership certificates provided for benefits " '* * * [i]f a member loses both feet, both hands or both eyes, thereby becoming totally disabled * * *' " (*Theorell v. Supreme Court of Honor* (1904), 115 Ill. App. 313, 314); thereafter, the certificate was amended to require " '* * * amputation or severance at or above the ankle or wrist * * *.' " (*Theorell v. Supreme Court of Honor* (1904), 115 Ill. App. 313, 315.) As the former provision governed, the court followed *Supreme Court of Honor v. Turner* (1901), 99 Ill. App. 310, 311, where the court had said:

> "Appellant contends that the judgment should be reversed because the evidence does not show a total and complete loss of the use of appellee's hand. It is insisted that to entitle a member to recover under a certificate like appellee's, the loss of the use of the

hand must be as complete as it would be were the hand amputated. We can not adopt a construction so narrow. To constitute the loss of a hand within the meaning of the certificate of insurance, it is not necessary that the hand be severed from the arm. It is lost if it be so badly injured that it cannot perform the functions intended for it."

In keeping with the standard of loss of use, the presence of the use of more than half a hand precluded characterization as a loss. (*Stoner v. Yeomen of America* (1910), 160 Ill. App. 432.) This long-standing Illinois position is in accord with the majority rule that loss of the use of a member is a loss of the member. See Annot., 87 A.L.R.2d 481 (1963).

■■ Construing the provision in the favor of the insured, we find that the lack of reference to severance or dismemberment of arms or legs in the specific loss provision, when such is required for hands or feet, invokes the application of the general rule regarding loss of a member. Accordingly, we hold that plaintiff has established a loss of arms and legs under the subject policy.

Plaintiff contends, in an ancillary argument, that since he has lost both hands, arms, feet and legs, he is entitled to a $40,000 specific loss recovery. Defendant responds that plaintiff's maximum loss is limited to the $10,000 maximum dismemberment benefit. Without detailing plaintiff's argument, we note that a $10,000 benefit is available for loss of both hands or both arms, as well as for loss of both feet or both legs. As actual severance is required to establish the loss of hands or feet, plaintiff's loss is limited to his arms and legs. As the $10,000 limitation applies only to dismemberment benefits and is thus not here applicable, we find that plaintiff is entitled to a $20,000 specific-loss recovery resulting from a $10,000 award for loss of both arms and a $10,000 award for loss of both legs.

■■ Plaintiff's second assignment of error concerning the coverage afforded by the policy involves its accident medical expense provision which provides:

"Part IV.    Accident Medical Expense Insurance

(Applicable only if the Schedule indicates coverage purchased)

When by reason of injury and within 45 days from the date of the accident, the Insured Person shall require treatment by a legally qualified physician or surgeon, hospital medical care or service, dental treatment to sound natural teeth, employment of a registered graduate nurse (R.N.) not a member of the Insured Person's family, or any other medical care or medical service the Company will pay the expenses actually incurred in excess of the deductible amount therefor by the Insured Person within the 48 months after the date the deductible has been satisfied, but not to exceed in the

aggregate the Maximum Injury Expense stated in the Schedule as applicable to the Insured Person as the result of any one accident. Payment will be made for expenses incurred for hospital services; physician, surgeon, physiotherapist and registered nurses fees; medical supplies (including prescription drugs); professional ambulance service; x-ray and laboratory tests; dental care for injury to teeth; anesthetics; plastic or cosmetic surgery required as a result of an accident; blood and blood plasma; artificial limbs and eyes, surgical dressings, orthepedic appliances and mechanical aids; the rental of wheel chairs and hospital type beds and similar equipment and rehabilitation expenses certified as necessary by the attending physician or surgeon."

Plaintiff contends that under the terms of the provision, payment must be made for numerous physical alterations to his home, including the widening of doors, the addition of ramps and plumbing, and the purchase of a specially equipped van, all of which have been certified as necessary by the attending physician. Defendant responds that only those expenses which can be characterized as medical are covered by the policy.

In *Camp v. Deseret Mutual Benefit Association* (1979), ___ Utah 2d ___, 589 P.2d 780, plaintiff's son was rendered an incomplete quadriplegic as a result of a trampoline injury. The policy in question partially provided benefits for:

"6. MEDICAL SUPPLIES AND EQUIPMENT—charges for medical supplies and medical equipment prescribed by a physician including oxygen; blood and other fluids to be injected into the circulatory system; artificial limbs and eyes; casts, splints, trusses, braces, orthopedic shoes, crutches, surgical dressings; and rental of special medical equipment recommended by a physician such as a wheelchair, hospital type bed, iron lung or oxygen equipment."

(*Camp v. Deseret Mutual Benefit Association* (1979), ___ Utah 2d ___, ___, 589 P.2d 780, 781.)

Relying on the above provision, plaintiff contended the purchase of a specially equipped van was covered by the policy. The court held that the van was not medical equipment and noted:

"Even though the term 'medical equipment' is not defined in the policy, it is not without meaning and limit, as suggested by the examples given in the policy. The term itself suggests equipment primarily used for a medical purpose, as distinguished from equipment in general. * * * Here, the van was prescribed by Dr. Escobar to enable Jeff to be more independent and for his convenience, not for aiding or relieving his physical condition. In his deposition, Dr. Escobar stated the main function of the van was to provide transportation, enabling Jeff to continue his schooling."

*Camp v. Deseret Mutual Benefit Association* (1979), ___ Utah 2d ___, ___, 589 P.2d 780, 781.

In the case at bar, the attending physician similarly certified that plaintiff required the van "as it is his only method of travel for medical treatment, therapy, and for school." Plaintiff argues that as the instant policy, unlike the policy in *Camp*, provides for payment for "mechanical aids" and "rehabilitation expenses certified as necessary by the attending physician or surgeon," the medical equipment standard is inapplicable. This argument overlooks the phrase "medical care or service" in the provision, the examples in the policy, and the caption "Accident Medical Expense Insurance." It further overlooks the fact that to rehabilitate means "to restore to a condition of good health, ability to work, or the like" (The Random House Dictionary of the English Language 1209 (unabr. ed. 1966)). As in *Camp*, the van in question serves to provide transportation rather than aiding or relieving his physical condition. Similarly, the physical alterations to plaintiff's home allow him to be more independent and are for his convenience. In both cases, we find at most a nebulous nexus between the claimed expenses and any direct rehabilitative endeavor. Accordingly, we find the trial court properly denied the benefits claimed under the accident medical expense coverage.

Plaintiff has raised an issue regarding procedural error, but since it does not affect our decision on the substantive issues of this appeal, we find it unnecessary to discuss it.

Plaintiff's final contention is that the trial court erred in not allowing, as part of the taxable costs in this action, reasonable attorney fees and statutory awards pursuant to the provisions of section 155 of the Illinois Insurance Code. (Ill. Rev. Stat. 1979, ch. 73, par. 767.) That section requires vexatious and unreasonable action or delay on the part of the insurer, a requirement which we do not find evidenced by the record herein. We therefore find no error in the trial court's ruling in regard to the allowance of these sums.

Accordingly, the judgment of the circuit court of Peoria County is reversed and this cause is remanded to said court with directions that judgment be entered in accord with the views expressed herein.

Reversed and remanded with directions.

BARRY and SCOTT, JJ., concur.