Emery HORVATIN, Mary Horvatin, Plaintiffs,

v.

**ALLSTATE LIFE INSURANCE COMPANY, and Does 1 Through 100, Inclusive, Defendants.**

**No. CV 85–1702–WMB.**

United States District Court, C.D. California.

March 31, 1986.

### MEMORANDUM OPINION AND ORDER

WM. MATTHEW BYRNE, Jr., District Judge.

Plaintiffs, Emery and Mary Horvatin, brought this action against Allstate Life Insurance Company (Allstate) in the Superior Court for Riverside County. Allstate removed the action to this Court on the basis of diversity jurisdiction. The complaint states claims for breach of an implied covenant of good faith and fair dealing, breach of fiduciary duty, fraud and violation of California Insurance Code Section 790.03 (West Supp.1986).

The parties have stipulated to the following facts: Allstate issued a Certificate of Insurance (the Certificate) evidencing coverage for Mary Horvatin and her spouse,

Emery Horvatin, under an Accidental Death and Dismemberment Insurance Policy (the Policy). While plaintiffs' coverage under the Policy was in effect, Emery Horvatin was injured in a motor vehicle accident. Although the accident resulted in paralysis and the loss of use of Emery Horvatin's legs, his feet were not severed from his body. Plaintiffs submitted a claim for accidental dismemberment benefits. Allstate denied the claim on the ground that Emery Horvatin's loss of use of his legs was not a covered loss under the Policy.

Allstate's Accidental Death and Dismemberment Policy provided for payment of benefits in the event of the "loss" of hands, feet or eyes. "Loss" is defined in the Certificate as follows: " 'Loss' as used with reference to a hand or a foot means severance at or above the wrist or ankle joint. Used with reference to the eye, means total and irrevocable loss of the entire sight of an eye."

The parties have jointly submitted the following questions to be determined by the Court as a matter of law:

(1) If Emery Horvatin's spinal cord was *not* severed, were the injuries which he suffered a covered loss under the terms of the Policy?

(2) If Emery Horvatin's spinal cord *was* severed, were the injuries which he suffered a covered loss under the terms of the Policy? [1]

The issue before the Court is whether an insured who suffers the loss of use of his legs, as a result of paralysis caused by a spinal injury, is entitled to benefits under an Accidental Death and Dismemberment Policy which provides benefits for the loss of a foot, by "severance at or above the ... ankle joint." As submitted by the parties, this issue is to be determined both on the assumption that Emery Horvatin's spinal cord was severed in the accident, and on the assumption that it was not.

Since this Court sits in diversity, it is required to apply California law. The question presented is one of first impression in California, and therefore this Court must determine the manner in which the Supreme Court of California would decide the question if it were presented to it. *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

California law governing the construction of insurance contracts was set forth in *New York Life Ins. Co. v. Hollender*, 38 Cal.2d 73, 237 P.2d 510, (1951). The court there stated that:

> In construing life insurance policies as in the construction of other contracts, the entire contract is to be construed together for the purpose of giving force and effect to each clause.... While it is settled law that in case of doubt the provisions of the insurance contract will be construed most strongly against the insurer ..., the rule is equally well established that where the terms of the policy are plain and explicit, the court will indulge in no forced construction so as to cast a liability upon the insurance company which it has not assumed.... In the interpretation of any written instrument, the primary object is to ascertain and carry out the intentions of the parties.

*Id.* at 81, 237 P.2d at 514.

Plaintiffs contend that the language defining "loss" is ambiguous, and must be construed against the insurer. The heart of plaintiffs' argument is that the Policy's definition of loss is vague enough to permit the interpretation that the loss of use of a foot due to paralysis is covered by the Policy. Plaintiffs argue that this interpretation is even more compelling where the spinal cord has been severed, since a "severance" has occurred.

Allstate contends that a spinal injury resulting in the loss of use of the foot is not covered, even if the spinal cord is severed. It argues that the language of the Certifi-

---

**1.** For the limited purpose of the Court's determination of question number 2, Allstate has stipulated that Emery Horvatin's spinal cord was severed in the accident.

cate is clear, and requires the actual, physical severance of the foot from the rest of the body, at or above the ankle.

Clearly, if there is no coverage under the Policy where the spinal cord is severed, there would be no coverage where the cord was not severed. The Court will therefore begin its analysis under the assumption that Emery Horvatin's spinal cord was severed in the accident.

Plaintiffs rely on *Crawford v. Lloyds London*, 275 Cal.App.2d 524, 80 Cal.Rptr. 70 (1969). In *Crawford*, an Accidental Death and Disability policy provided coverage for the loss of a limb, defined as "loss by physical separation of a hand at or above the wrist or of a foot at or above the ankle." *Id.* at 526, 80 Cal.Rptr. at 72. Plaintiff suffered a mangling injury to his left hand which necessitated the amputation of "all of his left thumb at the wrist joint, all of his index finger, including a portion of the long or metacarpal bone in his hand, all of his middle finger and two and one-half bones of his little finger." *Id.* at 525, 80 Cal.Rptr. at 71. The portion of his left hand that remained after the surgery was "useless" and impaired his ability to use a prosthesis. *Id.*

Lloyds London, which denied plaintiffs' claim for benefits, argued that the policy was unambiguous, and that plaintiff had not suffered the loss of a limb as defined in the policy. The court disagreed, concluding that the phrase "at or above the wrist" was "ambiguous and subject to judicial interpretation." *Id.* at 528, 80 Cal.Rptr. at 74. It therefore construed the ambiguity against the insurer, and found coverage.

The language which the *Crawford* court found ambiguous related to how much of the hand needed to be physically severed. In particular, the court found the word "at" to have an indefinite meaning. "In other words, the subject provision could mean, strictly, severance of the entire hand at the joint of the wrist *or* where amputation commences at the wrist joint, enough loss of the hand so as to render it useless." *Id.* at 530, 80 Cal.Rptr. at 75 (emphasis in original). The court did not find that the

policy extended coverage to injuries without physical severance of any part of the hand. Plaintiffs' reliance on *Crawford* is therefore misplaced.

Although there are no California cases directly on point, courts in other jurisdictions have confronted the issue presented here. In *Cunninghame v. Equitable Life Assur. Soc. of U.S.*, 652 F.2d 306 (2d Cir. 1981), the plaintiff fell from a ladder and sustained a compression fracture of his spine, "resulting in what is commonly called a 'severed' spinal cord." *Id.* at 307. Although the plaintiff's legs were not physically severed from his body, the accident resulted in the complete loss of use of both limbs. Plaintiff was insured under a Death and Dismemberment policy with language similar to that in the instant policy. It provided that: "With regard to hands and feet, loss shall mean dismemberment by severance at or above wrist or ankle joints respectively; with regard to eyes, total and irrevocable loss of sight." *Id.* at 307.

The plaintiff in *Cunninghame* made the same arguments presented here: that the policy is ambiguous; that the policy does not require actual physical severance; that loss of use of the legs due to a spinal injury is covered. These arguments were rejected by the court, which found that the language of the policy was clear, and "could not refer to any thing other than actual, physical separation of the feet from the rest of the body." *Id.* at 309. The court relied heavily on the dictionary's definition of dismember, "to cut or tear off or disjoin the limbs" and its definition of sever, "to divide or break up into parts," and found that the two words "essentially expressing" the same requirement of "some actual, physical separation." *Id.*

Plaintiff attempts to distinguish *Cunninghame* from the present case on the basis that the policy in *Cunninghame*, unlike the policy here, contained the words "dismemberment" and "severance" within the same sentence. However, the entire contract must be construed together to give effect to each clause. *New York Life, supra,* 38 Cal.2d at 81, 237 P.2d at 514.

Accordingly, the word "severance" must be evaluated in the context of a death and dismemberment policy; it should not be interpreted in a vacuum simply because the word "dismemberment" is not found in the same sentence. *But see Galindo v. Guarantee Trust Life Ins. Co.*, 91 Ill.App.3d 61, 46 Ill.Dec. 543, 414 N.E.2d 265 (1980) (finding ambiguity in a policy where "dismemberment" was not within the loss provision).

The logic of *Cunninghame* was followed in *Perry v. Connecticut General Life Insurance Co.*, 531 F.Supp. 625 (E.D.Va. 1982). In *Perry,* the plaintiff, who was insured under a Death and Dismemberment policy, was involved in a motorcycle accident in which he sustained spinal fractures resulting in the loss of use of both legs. The accident did not cause the physical severance of either of plaintiff's feet. The court found that the policy did not cover the plaintiff's injuries, concluding that "[t]o extend the coverage of this policy to situations involving a loss of use of one foot absent a physical cutting, separation or severance would deny effect to and would render meaningless the policy language 'by severance at or above the ankle.'" *Id.* at 627. *See also Sitzman v. John Hancock Mutual Life Ins. Co.*, 268 Or. 625, 522 P.2d 872 (1974) (severed spinal cord resulting in paralysis of both legs not covered under Death and Dismemberment policy providing for "loss by actual severance through or above the ... ankle joint"); *Juhlin v. Life Ins. Co. of North America*, 301 N.W.2d 59 (Minn.1980) (spinal cord injury resulting in paralysis of arms and legs not covered under Loss of Life, Limb, or Sight Indemnity policy providing for "loss by actual severance").

Plaintiff urges this Court to follow the decisions of the Supreme Court of the State of Washington in *Neer v. Fireman's Fund American Life Ins. Co.*, 103 Wash.2d 316, 692 P.2d 830 (1985), and the Appellate Court of Illinois in *Galindo, supra.* In *Neer,* the plaintiff severed his spinal column when he fell from a tree, and lost the use of his legs. The Loss of Life Accident Indemnity policy in issue provided benefits for loss of both feet, and defined loss as "complete severance through or above the ... ankle joint." *Id.* at 317–18, 692 P.2d at 832. The *Neer* court pointed out that Washington has adopted a functional definition of loss, and found that the policy did not require actual separation of a limb from the body. It held that the policy language embraced the loss of use of feet as the result of a severed spinal cord.

It was significant in *Neer,* however, that the policy broadly covered accidental injury, rather than death and dismemberment. In fact, the *Neer* court distinguished contrary authority on this basis, stating that "[n]othing in the policy limits loss to dismemberment or amputation as did provisions in many of the policies in the [other] cases...." *Id.* at 320, 692 P.2d at 833.

In *Galindo,* the plaintiff sustained a broken neck while playing in a high school football game, and lost the use of his arms and legs. The policy in that case provided indemnity for "Accidental Death, Dismemberment or Loss of Sight, caused by Accidental Bodily Injury," and defined "loss" in much the same manner as the policy in the instant case. 91 Ill.App.3d at 63, 46 Ill.Dec. at 545, 414 N.E.2d at 267. The court in *Galindo* found it significant that although the captions in the policy suggested that it indemnified for death and dismemberment, no reference was made to dismemberment in the loss provision of the policy. The court also noted that the loss provision required severance in regard to the hands and feet, but made no reference to severance with respect to the arms and legs, though the loss of arms and legs was listed in the schedule of compensable injuries. In light of this "ambiguity," the court applied the "general rule regarding loss of a member," that "loss of the use of a member is a loss of the member" and found coverage of plaintiff's loss of the use of his legs and arms. *Id.* at 64, 46 Ill.Dec. at 546, 414 N.E.2d at 268.

The description of compensable injuries in the Certificate in the present case refers only to the loss of hands, feet and eyes. It

does not refer to the loss of legs or arms. Accordingly, the fact that the loss provision only refers to severance with respect to the hands and feet does not create the ambiguity found by the *Galindo* court.[2] Furthermore, this Court does not find the absence of the word "dismemberment" in the loss provision to create an ambiguity. To the extent that *Galindo* is contrary to the logic of *Cunninghame* and *Perry,* this Court does not believe that the California Supreme Court would be inclined to follow it.

■ While ambiguous insurance contracts must be construed against the insurer, California law requires that plain and explicit contracts not be given a forced construction to impose a liability on the insurer which it has not assumed. *New York Life Ins. Co., supra.* This Court believes that to read a policy requiring severance at or above the ankles as covering the loss of use of the legs due to severance of the spinal cord, is to engage in such a forced construction. Plaintiffs' interpretation would find coverage whenever there was a severance of any nerve, tendon, or blood vessel resulting in loss of use of the limbs, wherever such "severance" occurred, in the brain, spine or cardiovascular system. This expansive interpretation would frustrate the parties' intentions when they formed the insurance contract.

If the Policy was intended to cover the loss of use of the foot, it would have said so, as it did where coverage was provided for loss of use of the eye. The loss provision does not require a "severance" with respect to the eye. Any injury resulting in the loss "of the entire sight of the eye" is covered. In contrast with this language, the Policy clearly contemplates a physical severance of part of the limb itself, when it defines loss of a foot as "severance at or above the ... ankle joint."

The Court therefore holds that language requiring severance at or above the ankle, in the context of this Death and Dismemberment Policy, is unambiguous and requires physical separation of part of the leg. The loss of use of the leg, even when caused by a severance of the spinal cord, is not within the Policy's coverage.

---

**2.** Even if arms and legs were specifically referred to in the description of compensable injuries, as in *Galindo,* this Court would not find the Policy ambiguous. The Policy clearly requires severance at or above the ankles or wrists, regardless of whether the injury results in the loss of the hands, arms, feet or legs.