[No. B030111. Second Dist., Div. Seven. Dec. 13, 1988.]

PAT G. SUAREZ, Plaintiff and Appellant, v.
LIFE INSURANCE COMPANY OF NORTH AMERICA et al.,
Defendants and Respondents.

**COUNSEL**

Litt & Stormer, Barrett S. Litt, Pegine E. Grayson and Karen L. Black for Plaintiff and Appellant.

Adams, Duque & Hazeltine, Margaret Levy and Cheryl A. De Bari for Defendants and Respondents.

**OPINION**

**LILLIE, P. J.**—Plaintiff, Pat Suarez, appeals from summary judgment in favor of defendants Life Insurance Company of North America (LICNA) and Times Mirror Company (Times) in plaintiff's action based on LICNA's denial of benefits to plaintiff under an accidental death and dismemberment policy issued to him by LICNA and advertised in defendant Times's newspaper, the Los Angeles Times.

### FACTUAL AND PROCEDURAL BACKGROUND

In October 1982 plaintiff's father, Bien Suarez, saw in the Los Angeles Times an advertisement for "Los Angeles Times Subscriber Accident Insurance" underwritten by LICNA and offered for a premium of $12 per year. The advertisement read in part: "Times Subscriber Accident Insurance is a plan of accidental death and dismemberment insurance covering freeway drivers, travelers and commuters, and those who enjoy many of Southern California's great outdoor and sports activities. . . . This plan covers loss of life, loss of sight, and loss of limbs as the result of an accident or a felonious assault on you. . . ." Mr. Suarez filled out an application for the advertised insurance on behalf of plaintiff and plaintiff signed the application. Mr. Suarez submitted the application and paid the premium. In November 1982 plaintiff became insured under LICNA's "Accidental Death and Dismemberment Policy" which included coverage of $100,000 for "loss of two or more members" sustained in a motor vehicle accident on a

freeway. The policy set forth the following definitions: " 'Member' means hand, foot or eye. 'Loss' means, with regard to hand or foot, actual severance through or above the wrist or ankle joints; with regard to eye, entire and irrecoverable loss of sight."

On November 24, 1984, while the policy was in effect, plaintiff's spinal cord was injured in an automobile accident on the Ventura Freeway. As a result of the injury plaintiff was paralyzed from the waist down losing the use of both of his legs; however, neither his legs nor his feet were severed from his body.

Plaintiff's father handled all of the family's insurance records. When he received the LICNA policy he filed it away without reading it. Plaintiff neither saw the advertisement nor learned of the policy until after his accident.

In December 1984 plaintiff notified LICNA of the accident. LICNA provided him with a claim form but the form was not completed and returned because in March 1985 plaintiff's father was told by one of LICNA's claims analysts that plaintiff's injury was not covered under the policy unless his legs were severed from his body in the accident. In October 1985 counsel retained by plaintiff sent LICNA a letter constituting a claim for $100,000 under the policy. LICNA denied the claim.

Plaintiff filed a complaint stating three causes of action: breach of insurance contract, breach of covenant of good faith and fair dealing, and fraud.[1] All three causes of action were directed against LICNA while only the third (fraud) was directed against the Times. The latter cause of action alleged that the accident insurance advertisement in the Los Angeles Times represented to the public that said insurance covered loss of the use of limbs because of injuries sustained in a freeway accident; said representation was false in that the coverage was intended by LICNA to be limited to injuries resulting in death or actual dismemberment of limbs; the policy purchased by plaintiff was not as represented by defendants and plaintiff was injured as a result of such misrepresentation.

---

[1] Plaintiff moved for leave to amend the complaint by adding Bien Suarez as a plaintiff and adding causes of action for violation of Insurance Code section 790.03, subdivision (b), violation of Business and Professions Code section 17500 et seq., and injunctive and declaratory relief. The trial court continued plaintiff's motion to amend to the date of hearing on defendants' motion for summary judgment. The court granted the motion for summary judgment and conditionally granted the motion to amend the complaint, i.e.: if on appeal the summary judgment were reversed the amended complaint would be deemed served and filed on the date of issue of the remittitur with all legal objections to the sufficiency of the amended complaint preserved.

After answering the complaint LICNA moved for summary judgment or, in the alternative, summary adjudication of issues. The Times joined in the motion. In support of the motion defendants presented copies of the advertisement and the accidental death and dismemberment policy as well as evidence of facts recited above.

Plaintiff opposed the motion. His opposition included the following evidence: The declaration of Edward Finegan, a professor of linguistics, expressed the opinion that neither the advertisement nor the policy is clear or unambiguous regarding the limitation of coverage to accidental injuries resulting in complete physical separation of a limb from the body; it is a semantically permissible and reasonable construction of both the advertisement and the policy that the insurance provided covers the loss of use of one's limbs; a significant number of readers of average intelligence would attach the foregoing interpretations to the advertisement or the contract. In his declaration Joseph Aoun, also a professor of linguistics, stated that based on the advertisement in the Los Angeles Times he purchased a LICNA policy; the advertisement led him to believe the policy covered loss of use of a limb as well as loss of the limb by its actual severance from the body. The declarations of Joe Phillips and Barbara Paull, both of whom had experience as insurance claims adjusters, stated that it was general practice in the insurance industry to honor policy claims based on an insured's reasonable understanding of coverage generated by ambiguous or misleading promotional material. The declaration of plaintiff's father stated that on reading the insurance advertisement in the Los Angeles Times he thought the subject policy covered loss of ability to use one's limbs; he had no idea when he purchased the policy that benefits would be paid only if arms or legs were actually severed from the body. In his declaration plaintiff, too, expressed the belief that the phrase "loss of limbs" includes loss of the use of one's limbs.

Defendants objected to the foregoing evidence. The objections were noticed for hearing at the time of the hearing on motion for summary judgment.

The trial court granted the motion for summary judgment and sustained defendants' objections to each of the six declarations submitted by plaintiff in opposition to the motion. The minute order so ruling stated in part: "I find nothing ambiguous about the advertisement or the policy or the definitions. Obviously, I have read the declarations which I have ruled inadmissible. . . . [¶] . . . . I have concluded that the 'loss of limb' and 'dismemberment' terms of the advertisement and policy do not reasonably lend themselves to the construction offered by plaintiff. . . ."

Summary judgment was entered in favor of defendants and against plaintiff. This appeal followed.

## DISCUSSION

## I

## BREACH OF CONTRACT AND BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

■ Where, as here, no triable issue of fact is presented and the sole remaining question is one of law, it may appropriately be determined on a motion for summary judgment. (*Neinstein v. Los Angeles Dodgers, Inc.* (1986) 185 Cal.App.3d 176, 179 [229 Cal.Rptr. 612].) ■ Construction of an insurance policy is a matter of law where the underlying facts are not in dispute. (*Northbrook Excess & Surplus Ins. Co. v. Coastal Rescue Systems Corp.* (1986) 182 Cal.App.3d 763, 767 [227 Cal.Rptr. 639].) On appeal the appellate court is not bound by the trial court's interpretation of the policy but must make its own independent interpretation. (*Cal-Farm Insurance Co. v. TAC Exterminators, Inc.* (1985) 172 Cal.App.3d 564, 571 [218 Cal.Rptr. 407]; *Economy Lumber Co. v. Insurance Co. of North America* (1984) 157 Cal.App.3d 641, 645 [204 Cal.Rptr. 135].)

■ Plaintiff contends the policy is ambiguous regarding the extent of coverage and such ambiguity must be resolved against the insurer (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168]) by construing the policy to provide coverage for loss of the use of a limb as well as severance of limb from body. We do not agree.

■ An insurance policy provision is ambiguous when it is capable of two or more constructions both of which are reasonable. Whether the language in a contract is ambiguous is a question of law. (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920].) In construing the language of an insurance policy a court should give the words used their plain and ordinary meaning, unless the policy clearly indicates to the contrary. When the language is clear a court should not give it a strained construction to impose on the insurer a liability it has not assumed. (*St. Paul Fire & Marine Ins. Co. v. Superior Court* (1984) 161 Cal.App.3d 1199, 1202 [208 Cal.Rptr. 5].) ■ An insurance company has the right to limit the coverage of a policy issued by it and the plain language of the limitation must be respected. (*National Union Fire Ins. Co. v. Estate of Meyer* (1987) 192 Cal.App.3d 866, 872 [237 Cal.Rptr. 632].) "Although we construe all provisions, conditions, or exceptions that tend to limit liability strictly against the insurer [citation], strict construction does

not mean strained construction. [Citations.] We may not, under the guise of strict construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid. [Citation.]" (*Safeco Ins. Co.* v. *Gilstrap* (1983) 141 Cal.App.3d 524, 532-533 [190 Cal.Rptr. 425].)

■ Applying these principles to the policy at issue, it is clear no coverage for loss of use of limbs, as opposed to loss of limbs by severance from the body, is provided. The policy furnished coverage of $100,000 for "loss of two or more members" in a freeway accident, defined "member" as hand, foot or eye and—most significantly—defined "loss" with regard to hand or foot as "actual severance through or above the wrist or ankle joints." The word "severance" means "the act or process of severing: the state of being severed [as in the phrase] . . . [severance] of the leg below the knee." (Webster's Third New Internat. Dict. (1981) p. 2081, col. 1.)

On policy provisions and facts like those of the present case, coverage was denied in *Horvatin* v. *Allstate Life Ins. Co.* (C.D.Cal. 1986) 631 F.Supp. 1271, affirmed (9th Cir. 1988) 848 F.2d 1012. There, plaintiffs were insured under an accidental death and dismemberment policy which provided for payment of benefits for loss of hands, feet or eyes. The policy defined "loss" as follows: " 'Loss' as used with reference to a hand or a foot means severance at or above the wrist or ankle joint. Used with reference to the eye, means total and irrevocable loss of the entire sight of an eye." While the policy was in effect plaintiff Emery Horvatin was injured in a motor vehicle accident. Although the accident resulted in paralysis and the loss of use of Emery's legs, his feet were not severed from his body. Plaintiffs submitted a claim for accidental dismemberment benefits under the policy. Defendant insurer denied the claim on the ground that Emery's loss of use of his legs was not a loss covered by the policy. Plaintiffs brought an action in California superior court for breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, fraud and insurance code violation. Defendant removed the action to the federal court on the basis of diversity jurisdiction. The court defined the issue to be whether an insured who suffers the loss of use of his legs, as a result of paralysis caused by a spinal injury, is entitled to benefits under an accidental death and dismemberment policy which provides benefits for the loss of a foot by "severance at or above the . . . ankle joint." Noting that this question was one of first impression in California, the court stated: "While ambiguous insurance contracts must be construed against the insurer, California law requires that plain and explicit contracts not be given a forced construction to impose a liability on the insurer which it has not assumed. [Citation.] This Court believes that to read a policy requiring severance at or above the ankles as covering the loss of use of the legs due to severance of the spinal cord, is to engage in such a forced construction. . . ." (*Horvatin* v. *Allstate Life Ins.*

*Co., supra,* 631 F.Supp. at p. 1275.) Accordingly, it was held that "language requiring severance at or above the ankle, in the context of this Death and Dismemberment Policy, is unambiguous and requires physical separation of part of the leg. The loss of use of the leg, even when caused by a severance of the spinal cord, is not within the Policy's coverage." (*Ibid.*)

Confronted with policy provisions and injuries to the insured similar to those in *Horvatin,* courts in other jurisdictions have reached a like conclusion. In *Harris* v. *Prudential Ins. Co. of America* (1986) 27 Ohio App.3d 291 [501 N.E.2d 77, 78] the Court of Appeals of Ohio stated: "The plain and ordinary language has but one meaning. The defendant defined the terms of loss and specified that loss, as far as the contract was concerned, was loss by severance. There is no reference in any form that loss of use was contemplated by the drafter. Such an interpretation might be applicable where the policy is void of a definition; it would then be a reasonable extension to hold that 'loss' also meant 'loss of use.' However, in the face of a definition, it is impossible to extend the terms of the policy. 'Severance' has but one meaning, i.e., 'to separate.' Random House Dictionary of the English Language (1971). In this there can be no ambiguity." (See also *Francis* v. *INA Life Ins. Co. of New York* (2d Cir. 1987) 809 F.2d 183; *Reid* v. *Life Ins. Co. of North America, Inc.* (4th Cir. 1983) 718 F.2d 677; *Becktell* v. *Allstate Life Ins. Co.* (E.D.Mich. 1986) 648 F.Supp. 977, affd. without pub. opn. (6th Cir. 1988) 838 F.2d 1215; *Traverse* v. *World Service Life Ins. Co.* (W.D.Okla. 1977) 436 F.Supp. 810; *Metropolitan Casualty Ins. Co.* v. *Shelby* (1917) 116 Miss. 278 [76 So. 839]; 15 Couch, on Insurance (2d ed. 1983) § 53.11, pp. 49-51.)

Plaintiff contends there is a split of authority "regarding whether dismemberment insurance policies which contain the 'severance' limitation cover loss of use of a limb." In support of this contention plaintiff cites *Crawford* v. *Lloyds London* (1969) 275 Cal.App.2d 524 [80 Cal.Rptr. 70], *Neer* v. *Fireman's Fund American Life Ins. Co.* (1985) 103 Wn.2d 316 [692 P.2d 830, 5 A.L.R.4th 149], and *Galindo* v. *Guarantee Trust Life Ins. Co.* (1980) 91 Ill.App.3d 61 [414 N.E.2d 265]. None of these cases is in point.

In *Crawford,* the policy in question was an accident policy, not a dismemberment policy. It provided benefits for total loss of a limb and defined "loss of a limb" as "loss by physical separation of a hand at or above the wrist or of a foot at or above the ankle." Plaintiff suffered an injury to his left hand which necessitated amputation of all or a portion of the thumb and each of the fingers. It was held that because plaintiff's injury resulted in amputation of all usable portions of his left hand commencing at the wrist joint he suffered a total loss of limb by physical separation within the meaning of the policy. *Crawford* does not aid plaintiff inasmuch as it involved loss of use of a limb by partial amputation, not by paralysis of the limb which left the

limb intact as in the present case. *Crawford* stands for the proposition that a substantial severance satisfies a policy where there is functional loss as if the limb had been completely severed from the body. (See *Reid* v. *Life Ins. Co. of North America, Inc., supra,* 718 F.2d 677, 681.)

In *Neer,* plaintiff lost the use of his feet in a fall from a tree. His loss of life accident indemnity policy provided benefits for loss of both feet and defined loss as "complete severance through or above the . . . ankle joint." The court held that the policy covered plaintiff's loss because the term "loss" as described by the policy does not require dismemberment or amputation. The policy in *Neer,* however, broadly covered accidental injury rather than dismemberment and it was on this basis that the court distinguished contrary cases: "Nothing in the policy limits loss to dismemberment or amputation as did provisions in many of the policies in the cases relied on by Fireman's Fund." (*Neer, supra,* 692 P.2d at p. 833.)

In *Galindo,* plaintiff became a quadriplegic as the result of a football accident. His accidental death and dismemberment policy defined "loss" in much the same manner as the policy in the instant case. The court concluded the policy was ambiguous in that while the captions suggested the policy indemnified for death, dismemberment or blindness, no reference to dismemberment was made in the specific loss provision. Rather, the reference in the loss provision was to severance and that reference was only in regard to hands and feet; the loss provision did not mention arms and legs. (*Galindo, supra,* 414 N.E.2d at p. 268.) Construing the ambiguity in favor of plaintiff, the court held that plaintiff established a loss of arms and legs under the policy. (*Ibid.*) No such ambiguity exists in the present case inasmuch as the policy refers only to the loss of hands, feet or eyes and the loss provision refers to severance with respect to both hands and feet. Further, contrary to the conclusion of the *Galindo* court, absence of the word "dismemberment" in the loss provision does not create an ambiguity. (*Horvatin* v. *Allstate Life Ins. Co., supra,* 631 F.Supp. 1271, 1275.)

Plaintiff contends that, based on the advertisement, a person reasonably could expect the advertised policy to provide coverage for loss of use of limbs and the policy must be construed in accordance with such expectation. ■ "The express provisions of the insurance contract must be considered in light of the insured's normal expectations of the extent of the coverage of the policy . . . ." (*Gyler* v. *Mission Ins. Co.* (1973) 10 Cal.3d 216, 220 [110 Cal.Rptr. 139, 514 P.2d 1219].) "The court may properly consider *advertising copy and brochures* issued by the insurance company describing the coverage in determining a purchaser's 'reasonable expectations.' (*Silberg* v. *Calif. Life Ins. Co.* (1973) 11 Cal.3d 452, 113 CR 711.) [¶] Rationale: Most persons do not read their insurance policies carefully.

Their decision to purchase and their expectations as to coverage are usually based on advertising or brochures prepared by the insurer. The insurer should be bound by the expectations it has created. Thus, it may be required to provide coverage according to its advertising, despite more restrictive provisions in the insurance contract itself. [*Ibid.*]" (Cal. Practice Guide, Bad Faith (1986) §§ 2:24, 2:25, pp. 2-6, 2-7; italics in original.) A party's reasonable expectation of coverage is a question of law not a question of fact. (*Oliver Machinery Co.* v. *United States Fid. & Guar. Co.* (1986) 187 Cal.App.3d 1510, 1518 [232 Cal.Rptr. 691]; *Schrillo Co.* v. *Hartford Accident & Indemnity Co.* (1986) 181 Cal.App.3d 766, 776 [226 Cal.Rptr. 717].) ■ Neither the advertisement nor the policy refers to coverage for loss of use of a limb. The advertisement describes the policy as "a plan of accidental death and *dismemberment* insurance covering freeway drivers . . . . This plan covers loss of life, loss of sight, and loss of limbs as the result of an accident or felonious assault on you. . . ." (Italics added.) "Dismemberment" is defined as "the act of dismembering or the state of being dismembered: division into separate parts or units"; "dismember" means "to cut or tear off or disjoin the limbs, members or parts of." (Webster's Third New Internat. Dict. (1981) p. 652, col. 1.) In light of these definitions the phrase "loss of limbs" in the advertisement can mean only loss by separation of the limb from the body. While the advertisement does not include the policy definition of "loss" as actual "severance through or above the wrist or ankle joints," the fact that language could be more explicit does not render it ambiguous. (See *Allstate Insurance Co.* v. *Condon* (1988) 198 Cal.App.3d 148, 154 [243 Cal.Rptr. 623].)

Plaintiff further argues the trial court improperly ruled that the evidence presented by plaintiff in opposition to the motion for summary judgment was inadmissible as an aid in interpreting the policy and the advertisement. The declaration of Edward Finegan, professor of linguistics, stated that the language of both the advertisement and the policy was ambiguous regarding limitation of coverage and was subject to the reasonable interpretation that the insurance covered loss of use of limbs. Plaintiff and his father, as well as Joseph Aoun, a linguistics professor who purchased the policy in question, stated in their respective declarations that such was their understanding of the advertisement and the policy. The declarations of Joe Phillips and Barbara Paull, employed in the insurance industry, stated it was the general practice in that industry to honor policy claims in accordance with an insured's understanding of coverage based on ambiguous promotional material. As previously noted herein, a policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable. (*Delgado* v. *Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, 271 [203 Cal.Rptr. 672].) ■ Whether language in a contract is ambiguous is a question of law. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co., supra,* 41 Cal.3d 903,

912.) "While extrinsic evidence may be considered by a court as an aid in the interpretation of a written contract when it is 'relevant to prove a meaning to which the language of the instrument is reasonably susceptible' [citation], ' " '[i]f the evidence offered would not persuade a reasonable man that the instrument meant anything other than the ordinary meaning of its words, it is useless.' " ' [Citation.]" (*Id.* at p. 913.) The meaning the average reader would give the advertisement and the policy was not a question for the opinion of an expert witness such as Mr. Finegan. (See *Patton* v. *Royal Industries, Inc.* (1968) 263 Cal.App.2d 760, 770 [70 Cal.Rptr. 44].) The evidence offered by plaintiff does not establish that the language of the advertisement and the policy is reasonably susceptible of a meaning other than that determined by the trial court and this court, i.e., coverage is not provided for loss of use of limbs, but only for loss of limbs by dismemberment (advertisement) or their actual severance from the body (policy). The trial court did not abuse its discretion in ruling plaintiff's evidence inadmissible. In any event, even if error appeared in that ruling, it would not be prejudicial inasmuch as the court fully considered the evidence in passing on the motion for summary judgment. (See *State Farm Fire & Cas. Co.* v. *Alstadt* (1980) 113 Cal.App.3d 33, 40-41 [169 Cal.Rptr. 593].)

■ Having made an independent interpretation of the policy provisions we conclude, as did the trial court, that the policy does not cover loss of use of limbs. Accordingly, defendant LICNA did not breach its contract of insurance with plaintiff by refusing to pay benefits for loss of the use of plaintiff's legs resulting from paralysis.

■ The covenant of good faith and fair dealing "is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for *a loss covered by the policy,* such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing." (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 574 [108 Cal.Rptr. 480, 510 P.2d 1032]; italics in original omitted; italics above added.) Inasmuch as defendant LICNA's refusal to pay benefits for plaintiff's loss of use of his limbs was in accord with the provisions of the parties' contract of insurance, defendant did not breach the covenant of good faith and fair dealing by asserting lack of coverage for such loss.[2] (See *Kopczynski* v. *Prudential Ins. Co.* (1985) 164 Cal.App.3d 846, 849 [211 Cal.Rptr. 12].)

---

[2] Plaintiff alleged that defendant LICNA further breached the implied covenant of good faith and fair dealing in that defendant intentionally misled plaintiff as to the scope of coverage of his policy; specifically, defendant failed to tell plaintiff that the coverage applied to actual severance of limbs and sought to create the impression that the coverage included loss of

## II

### FRAUD

Plaintiff's cause of action for fraud, directed against both defendants, alleged the advertisement falsely represented that the insurance policy covered loss of use of limbs due to injuries sustained in a freeway accident and did not indicate that benefits would be paid only for dismemberment or death. Plaintiff read such misrepresentations and relied on them in purchasing the policy.

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage. [Citations.]" (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 676, p. 778; see also *Orient Handel* v. *United States Fid. & Guar. Co.* (1987) 192 Cal.App.3d 684, 693 [237 Cal.Rptr. 667].) As indicated *ante,* while the statements in the advertisement were succinct, they were not in conflict with, nor misleading with regard to, the actual terms of the policy. It follows that misrepresentation, the basic element of a cause of action for fraud, is lacking. Further, although defendant's father read the advertisement before he purchased the policy, the evidence shows without contradiction that plaintiff, the named insured, did not read the advertisement until after his accident. Accordingly, reliance on the part of plaintiff likewise is lacking as a matter of law.

### DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal from plaintiff.

Woods (N. F.), J., and Kolts, J.,* concurred.

---

use of limbs. As plaintiff concedes, these allegations overlap the allegations of his cause of action for fraud which is discussed below.

*Assigned by the Chairperson of the Judicial Council.