[No. D020302. Fourth Dist., Div. One. Nov. 19, 1996.]

FARMERS INSURANCE EXCHANGE, Plaintiff and Respondent, v.
REDEMPTA YU KNOPP et al., Defendants and Appellants.

**COUNSEL**

Luce, Forward, Hamilton & Scripps, Charles A. Bird and Gerald S. Davee for Defendants and Appellants.

Chapin, Fleming & Winet, Edward D. Chapin, Lawrence W. Shea II, Horvitz & Levy, Lisa Perrochet and John A. Taylor, Jr., for Plaintiff and Respondent.

**OPINION**

**PATE, J.**[*]—In this appeal from a declaratory judgment in favor of plaintiff Farmers Insurance Exchange (Farmers) we must determine whether the personal automobile liability policy issued by Farmers to defendant Michael Herrin (Herrin), a named insured, provides coverage for an automobile accident that occurred when Herrin was driving his employer's automobile. Herrin was employed as a driver for a "limousine" service for hire by

---

[*]Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

members of the general public. At the time of the accident, he had dropped off his passenger and was returning to his employer's place of business. We conclude the Farmers automobile liability policy issued to Herrin does not provide coverage for this accident and, accordingly, affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Farmers filed the instant declaratory relief action in May 1991 against Herrin and defendant Redempta Yu Knopp (Knopp), who was seriously injured in the subject accident. Following a bench trial, the court succinctly set forth the undisputed relevant facts in its statement of decision, which we quote in pertinent part:

"Redempta Knopp was injured in an auto accident with [Farmers's] insured, Herrin. At the time of the accident, defendant Herrin was driving a 1977 Mercedes Benz owned by his employer, La Jolla Transportation Inc. La Jolla Transportation, a charter party carrier service, was engaged in the business of carrying customers for hire. Customers would call the company, request transportation, and a driver and car would be dispatched to pick up the customer and transport him or her to a destination. After the passenger was dropped off, the driver would either proceed to another fare or return to the office at the direction of his dispatcher. When this accident occurred, Herrin had dropped off a fare several blocks away and was enroute [*sic*] to the office, as he had been instructed.

"La Jolla Transportation had insurance which provided coverage for the negligent conduct of Herrin while acting in the course of his job. In addition, Herrin was insured under a personal auto insurance policy issued by plaintiff Farmers. Herrin's Farmers policy provided coverage for damages arising out of his use of non-owned private passenger cars such as the 1977 Mercedes. The policy,[1] however, contained several exclusions, each of which [Farmers] asserts precludes coverage in this case.

"The first, Exclusion No. 1, states,

" 'This coverage does not apply to:

" '1. **Bodily injury** or **property damage** arising out of the ownership, maintenance or use of a vehicle while used to carry persons or property for a charge. This exclusion does not apply to shared-expense carpools.'

---

[1]"Farmers Insurance Exchange E-Z Reader 3rd Edition Automobile Policy No. 99-12287-62-93, effective October 17, 1989, through October 16, 1990."

"Exclusion No. 5 provides that coverage does not apply to

" '**Bodily injury** or **property damage** for any person while employed or otherwise engaged in the business or occupation of transporting, selling, repairing, servicing, storing or parking of vehicles designed for use mainly on public highways, including road testing or delivery.

" 'This exclusion does not apply to the ownership, maintenance or use of **your insured car** by you, any **family member**, or any partner agent, or employee of you or any **family member. . . .'**

". . . . . . . . . . . . . . . . . . . . . . . . .

"The accident in this case occurred on March 7, 1990. Knopp was injured when [she] was struck by a vehicle driven by Herrin in the course of his employment as a limousine driver for La Jolla Transportation. La Jolla Transportation had insurance with Empire Indemnity Insurance Company. Herrin had a personal lines auto insurance policy with Farmers. . . . [T]he Farmers policy, if it provided coverage, was excess to the Empire policy, and thus, Farmers had no duty to defend or indemnify until the primary coverage was exhausted. Despite that fact, when the accident was reported to Farmers on May 9, 1990, it was assigned to an adjuster, Seidenglanz, who upon receipt of the report of loss and after discussion with Herrin's attorney, Wing, had doubts as to whether there was coverage under the Farmers[] policy, because the accident had occurred during a business use of the vehicle.

". . . . . . . . . . . . . . . . . . . . . . . . .

"Ultimately, despite the coverage dispute, after the primary coverage had been exhausted, Farmers offered to settle the case for its policy limits of $30,000. Knopp, claiming that this offer was too late, refused the offer and now claims that Farmers should be responsible for all excess damages which she might recover in this matter, regardless of its policy limits." [Bold in original.]

### CONTENTIONS ON APPEAL

Knopp and Herrin (defendants) contend exclusion No. 1 in the Farmers policy (Exclusion No. 1) does not preclude coverage for Knopp's

damages because at the time of the accident there was no fare-paying passenger in the automobile Herrin was driving.[1]

## DISCUSSION

### I. *The Exclusion*

Exclusion No. 1 in the Farmers policy in pertinent part states, "This coverage does not apply to bodily injury arising out of the . . . use of a vehicle while used to carry persons or property for a charge." Defendants read this to mean the exclusion is limited to those times when a passenger or property, for which a fare is being charged, is actually present in the vehicle. Farmers asserts that driving the vehicle to and from the passenger or property pick up and discharge points is an integral part of using a vehicle to carry persons or property for a charge and, therefore, the exclusion applies during those times.

■ The interpretation of an insurance contract is primarily a judicial function and the court will make its own independent determination, absent conflicting extrinsic evidence. (*Masonite Corp.* v. *Great American Surplus Lines Ins. Co.* (1990) 224 Cal.App.3d 912, 916 [274 Cal.Rptr. 206].) The fundamental goal of the court is to interpret the contract so as to give effect to the mutual intention of the parties. If possible, the court will determine the mutual intent from the provisions of the contract itself. (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 821-822 [274 Cal.Rptr. 820, 799 P.2d 1253].) "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' . . . controls judicial interpretation. [Citation.] Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. [Citations.]" (*Id.* at p. 822.)

---

[1]In their briefs, defendants also contended Farmers automatically waived its right to deny coverage by failing to reserve it before undertaking Herrin's defense, relying on *Alta Cal. Regional Center* v. *Fremont Indemnity Co.* (1994) 25 Cal.App.4th 455 [30 Cal.Rptr.2d 841]. However, after briefing the California Supreme Court in *Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 34 [44 Cal.Rptr.2d 370, 900 P.2d 619] disapproved *Alta Cal.* to the extent it relied on the automatic waiver rule set forth in *McLaughlin* v. *Connecticut General Life Ins. Co.* (N.D.Cal. 1983) 565 F.Supp. 434. *McLaughlin* concluded ". . . the California Supreme Court would hold that an insurance company which relies on specified grounds for denying a claim thereby waives the right to rely in subsequent litigation on any other grounds which a reasonable investigation would have uncovered." (*Id.* at p. 451.)

In light of the California Supreme Court's rejection of the *McLaughlin/Alta Cal.* automatic waiver rule, and the fact defendants have argued only automatic waiver on appeal, they conceded the waiver/estoppel issue at oral argument. Consequently, we do not address that issue further in this opinion.

We conclude the meaning a layperson would ascribe to the language of Exclusion No. 1 is not ambiguous. Exclusion No. 1 applies to the "*use* of a vehicle while *used* . . . ." (Italics added.) Why the duplication of the word use(d)? If Farmers intended to limit the exclusion of coverage to when the specific act of carrying persons or property for a charge was being performed, then the second "use" was superfluous and redundant. The exclusion should read simply: "This coverage does not apply to: Bodily injury . . . arising out of the . . . use of a vehicle while carrying persons or property for a charge." Since contracts, including insurance contracts, are to be construed to avoid rendering terms surplusage (*ACL Technologies, Inc.* v. *Northbrook Property & Casualty Ins. Co.* (1993) 17 Cal.App.4th 1773, 1785 [22 Cal.Rptr.2d 206]), we will look to other reasonable interpretations of this policy language.

As is common in the English language, a word may have a variety of meanings,[2] depending on the context in which it is used. If different meanings are attributed to the words "use" and "used," to avoid redundancy in Exclusion No. 1, the exclusion takes on a different meaning. "Use" in the context of "use of a vehicle" fits within the definition of "use" as "to put into action or service." The most common example of such "use" would be to drive the vehicle. "Used" in the context of the phrase "vehicle while used to carry" most closely fits the definition "employed in accomplishing something." With these two definitions in mind, the correct interpretation of the phrase "use of a vehicle while used to carry," would be "driving a vehicle while it is employed in accomplishing the assignment of carrying persons or property for a charge."

Applying this interpretation to the circumstances of a "limousine service" is instructive. There are three phases to the process of carrying a person for a charge. First is the request for the service and the dispatching of the vehicle to pick up the customer. Second is the physical transportation of the customer as directed. Third is the return of the transporting vehicle to its place of business, or further dispatching to another site to accommodate a subsequent transportation request. These steps are intertwined and sequentially interdependent.

The issue then is: During which of these steps is the subject vehicle being "used," that is employed, to carry persons for hire? Since the purpose of the business enterprise cannot be accomplished without all three steps, it follows that the vehicle is being "used" in the employment sense during the entire process, from dispatch through return. Therefore, by the terms of Exclusion

[2]The word "use" has at least seven different meanings, while "used" has at least two. (Webster's New Collegiate Dict. (9th ed. 1988) p. 1299.)

No. 1, the policy does not cover an accident occurring during the return step, which is when Herrin's accident happened.

Under the plain meaning a layperson would likely ascribe to Exclusion No. 1, the Farmers policy does not provide coverage for the injuries and damages arising from Herrin's accident.

## II. *Reasonable Expectations of the Insured*

Even if we were to conclude the meaning a layperson would give to Exclusion No. 1 is ambiguous, we would nevertheless find that Herrin did not have an objectively reasonable expectation his Farmers automobile liability policy would provide coverage for this accident.

■ Ambiguity in policy language is resolved by interpreting the ambiguous language in accordance with the objectively reasonable expectations of the insured. (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264-1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].) "Only if this rule does not resolve the ambiguity do we then resolve it against the insurer." (*Id.* at p. 1265.) If an insured could not reasonably expect coverage, we do not construe ambiguous language in favor of coverage. (*Ibid.*; *Cooper Companies* v. *Transcontinental Ins. Co.* (1995) 31 Cal.App.4th 1094, 1106 [37 Cal.Rptr.2d 508].) "A party's reasonable expectation of coverage is a question of law not a question of fact." (*Suarez* v. *Life Ins. Co. of North America* (1988) 206 Cal.App.3d 1396, 1406 [254 Cal.Rptr. 377].)

In determining whether coverage is consistent with the objectively reasonable expectations of an insured, "the court must interpret the language in context, with regard to its intended function in the policy. [Citation.] This is because '*language in a contract* must be construed in the context of that instrument as a whole, and in the circumstances of that case, and *cannot be found to be ambiguous in the abstract.*' [Citations.]" (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th at p. 1265, italics added by *Bank of the West.*) The court may also rely on common sense in determining the insured's objectively reasonable expectations. (*Id.* at p. 1276.)

■ The policy in question is entitled "Your E-Z-Reader Car Policy." It states the insurance company "will pay damages for which any insured person is legally liable because of bodily injury to any person . . . arising out of the . . . use of a private passenger car, a utility car, or a utility trailer." In the "Definitions" section of the policy, private passenger car is defined to include any four-wheel private passenger or station wagon type land motor vehicle that is licensed for use on the public highways. The

Mercedes Benz automobile being operated by Herrin at the time of the accident clearly falls within this definition.

The subject policy does not cover, by definition, the use of a motor home used in a business or with more than six wheels, a pickup, van or panel truck with a rated capacity of over one ton, or used in a business other than farming or ranching. The policy also excludes from coverage certain types of activities with vehicles, such as carrying persons or property for hire (Exclusion No. 1); injury or damage caused intentionally (Exclusion No. 2); injury to an employee arising from employment (Exclusion No. 4); injury to a person in the business of selling, servicing or transporting automobiles (Exclusion No. 5); injury arising out of the use of a vehicle in a business, except for maintenance or use of a private passenger car, utility car or utility trailer (Exclusion No. 6); and damage to the insured's property (Exclusion Nos. 8 & 9). There are also various exclusions related to nondescribed automobiles, vehicles used in racing, obligations arising under contract and liability following transfer of ownership (Exclusion Nos. 10-14).

In addition to liability coverage the policy provides coverage for accidents with "uninsured motorists," medical coverage, comprehensive and collision coverage as well as numerous other contractual provisions. Read in its entirety the policy in question appears to be typical of personal automobile insurance policies issued to protect members of the general public when operating automobiles under normal circumstances. It does not appear to be the type of policy intended to provide coverage for insureds while they are engaged in the *profession* of driving passengers for hire in passenger car type motor vehicles, such as taxicabs or limousines.

While the reasonable expectations of the insured are determined as a matter of law, it is noteworthy that on Herrin's application for this insurance policy, his occupation was listed as a medical assistant for a local hospital. He was not employed as a motor vehicle operator at the time the policy in question was issued. There is nothing in the record to indicate Herrin expected to be covered by this policy when working as a motor vehicle driver or that he requested such coverage from Farmers.

The alleged ambiguity in Exclusion No. 1 was properly resolved in favor of Farmers. The trial court stated it was unable to find, from the circumstances surrounding the case, that "this promisee (Farmers) believed that this promisor (Herrin) understood this policy to provide coverage under these facts." This finding comports with our conclusion that Herrin did not have an objectively reasonable expectation of coverage for the subject accident.

The operation of a motor vehicle as part of one's employment to carry persons or property for a charge is not covered under the Farmers policy

issued to Herrin. The trial court did not err in concluding the claimed ambiguity in Exclusion No. 1 does not give rise to coverage for the subject accident.

DISPOSITION

The judgment is affirmed.

McDonald, J., concurred.

**WORK, Acting P. J.,** Concurring.—I agree the personal automobile policy issued by Farmers does not afford coverage for claims arising from Herrin's accident. However, I conclude the analytical threshold of ambiguity is met here where I find two reasonable facial interpretations of the Exclusion No. 1 language. I do not find the majority's sophisticated tautology analysis persuasive and note that it was not advanced by Farmers, which has consistently argued the exclusionary language is "explicit and clear" or, alternatively, that Herrin could not have reasonably expected coverage for this event.

Although I cannot accept the proposition that employing both the words "use" and "used" in Exclusion No. 1 saves its exclusionary language from ambiguity when read by persons (other than philologists) I concur that no reasonable insured would objectively expect coverage for the claim pursued under this personal automobile policy.

A petition for a rehearing was denied December 17, 1996, and appellants' petition for review by the Supreme Court was denied February 5, 1997. Mosk, J., was of the opinion that the petition should be granted.