JOHN P. MILLER, Plaintiff-Appellee, v. AMERICAN NATIONAL FIRE INSURANCE COMPANY, Defendant-Appellant.

Third District   No. 3—91—0182

Opinion filed November 8, 1991.—Rehearing denied December 23, 1991.

Law Offices of Day & Day, of Peoria (Robert G. Day, Jr., of counsel), for appellant.

Kuhfuss, Kuhfuss & Kepple, of Pekin (W. Thad Kuhfuss, of counsel), for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The defendant, American National Fire Insurance Company, appeals the entry of summary judgment by the trial court in favor of the plaintiff, John Miller. We affirm.

Miller owned certain farmland and a 50% interest in the crops located thereon. A tenant farmer owned the other 50% interest. The tenant farmer is not a party in this appeal.

During the crop year in question, Miller obtained multiple-peril crop insurance which insured his 50% interest in the corn and soybean crops planted on his farmland. The insurance policy covered loss of crops due to adverse weather such as hail, wind, etc.

Miller's insurance policy covered his interest in a soybean field not following a crop (NFAC), as well as his interest in a separate soybean field following a crop (FAC). Miller paid two separate and distinct insurance premiums for each of the two soybean fields insured. The term "following a crop" means that soybeans have been planted in the same field that has had another crop during the same planting season. The insurance carrier, because of the different risks involved

with the NFAC fields and the FAC fields, uniformly charges different rates when insuring such fields. Miller suffered hail damage to the soybeans planted on the FAC field.

The provisions of Miller's insurance policy contained price and bushel guarantees for each field (FAC and NFAC). The price for both fields was identical ($6.17), but the bushel guarantee was different. The guarantee for the soybean field planted FAC was 1,333 bushels. The guarantee for the soybean field planted NFAC was 1,749 bushels.

There was no dispute that the soybean production for the FAC soybean field was nil while the production of the NFAC field was 2,694 bushels. The insurance carrier allotted Miller the full bushel production and price guarantee of 1,333 bushels at $6.17 per bushel respectively, which amounted to a total loss of $8,225. This amount was reduced to reflect Miller's 50% interest in this field for an actual loss of $4,112.

The NFAC soybean field produced 2,694 bushels, which exceeded the production guarantee by 945 bushels. The insurance carrier multiplied those excess bushels by the price guarantee of $6.17 per bushel and determined that the NFAC field produced a surplus of $5,831 over the guarantee. The insurance carrier calculated the surplus attributable to Miller to be $2,916, which represented his 50% interest in the crops on the NFAC field. The insurance carrier then combined Miller's loss of $4,112 on the FAC field and subtracted from it the $2,916 surplus from the NFAC field. The insurance carrier finally determined Miller's net insurable loss to be $1,196. Miller, however, insisted that he was entitled to the net insurable loss from the FAC field ($4,112) without any offset from the NFAC field.

Miller sued the insurance carrier to recover the $4,112. Miller claimed that because the FAC soybean field was separately scheduled on his insurance policy, he was entitled to the loss he suffered exclusively on that field. Both parties filed motions for summary judgment. The trial court granted Miller's motion for summary judgment and the insurance carrier appeals.

The insurance carrier contends the trial court erred in holding that the crop damage should be determined solely from the FAC field without considering the overall production of both fields. The insurance carrier claims the terms of the insurance policy permit it to combine the production from both fields to compute the total loss payable.

It is undisputed Miller suffered a total soybean crop loss on the FAC field. The schedule of insurance for that field provided coverage limits of $4,112. Miller made no claim whatsoever for damage to the

NFAC field. Each field was separately scheduled with a separate premium set forth on the insurance policy.

The insurance policy provides in pertinent part:

"3. CROP, ACREAGE AND SHARE INSURED.

The crop(s) insured for each crop year will be:

a. those shown on your Schedule of Insurance;

b. that for which we provide a guarantee and a premium rate and will include:

(1) field corn planted for harvest as grain;

(2) soybeans planted for harvest as beans; or

(3) combine-type grain sorghum planted for harvest as grain;

4. CLAIM OF LOSS.

A. You must establish the total production of the insured crop on *the farm unit* and the amount of any loss of production that has been directly caused by one or more of the insured causes during the insurance period.

B. Losses will be determined by us for *each farm unit* and will be calculated from the information you supplied on your acreage report or the information determined by us to be correct. If you cannot establish the total production of the insured crop for any optional unit we will determine your loss by combining those optional units so that the total production can be determined.

C. We will pay you the deficiency, if any, between the amount of insurance for *the farm unit* show [*sic*] on your Schedule of Insurance and your production to count multiplied by your insured crop price election times your share.

D. The total production to be counted from all insurable acreage for *the farm unit* will include all appraised and harvested production of the insured crop(s), and, on a weight basis, production from any other crop(s) growing with the insured crop." (Emphasis added.)

The soybeans FAC constitute an "insured crop" under paragraph 3 of the policy because they are the crop shown on the insurance schedule for which a guarantee and individual premium rate are charged. The premium rates for each field are different. The premium rate for soybeans FAC is $263, while the soybeans NFAC is $237. Each crop possesses a different risk. For instance, the risk of crop damage to soybeans FAC is higher since the soybeans cannot be planted until the wheat harvest has been completed. The growing season is shorter, and when combined with the late planting, the crop is

more susceptible to damage, which is reflected by the higher premium rate. Corn and soybeans are both grown on the FAC field while only soybeans are grown on the NFAC field.

The claim of loss provision contained within section 4 of the policy requires plaintiff to establish the total production of the "insured crop" on the "farm unit." Since each crop (NFAC and FAC) was separately scheduled, each was a separate crop for which coverage was provided under the policy. Miller is entitled to recover for all loss of a particular crop, *i.e.*, either NFAC or FAC, which occurs on the entire "farm unit."

The terms of the policy are sufficiently clear and unambiguous. Courts should enforce the provisions of an insurance policy that are clear and unambiguous. (*Galindo v. Guarantee Trust Life Insurance Co.* (1980), 91 Ill. App. 3d 61, 414 N.E.2d 265.) To the extent possible, the trial court should give effect to all provisions of an insurance policy and interpret the words according to their plain, ordinary, and popular meanings. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 475 N.E.2d 872.) The trial court's ruling was consistent with the terminology and provisions contained within the policy. In interpreting the provisions of an insurance policy, the intent of the parties is a significant factor the court should also consider. *Kaufmann v. Economy Fire & Casualty Co.* (1979), 76 Ill. 2d 11, 389 N.E.2d 1150.

Therefore, the trial court's ruling was consistent with the intent and clear meaning of the provisions of the policy. The trial court's interpretation was appropriate under these circumstances because Miller had two separate and distinct farm units for which he had paid two separate and distinct premiums.

For the reasons heretofore indicated, the circuit court of Tazewell County is hereby affirmed.

Affirmed.

GORMAN and HAASE, JJ., concur.